**FILED**

AUG - 1 2018

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS SAN
ANTONIO DIVISION

|  |  |
|---|---|
| BILLY JULIUS PORTER, JR., | § |
|  | § |
|  | § |
| Pro Se Plaintiff, | § |
|  | § Civil Action No. 5: 18-CV-00640-DAE |
| V. | § |
|  | § |
| UNITED STATES OF AMERICA | § |
|  | § |
| Defendant. | § |

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS SAN
ANTONIO DIVISION

|  |  |
|---|---|
| BILLY JULIUS PORTER, JR., | § |
|  | § |
|  | § |
| Pro Se Plaintiff, | § |
|  | § Civil Action No. 5:18-CV-00641-OLG-HJB |
| V. | § |
|  | § |
| UNITED STATES OF AMERICA | § |
|  | § |
| Defendant. | § |

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS SAN
ANTONIO DIVISION

|  |  |
|---|---|
| BILLY JULIUS PORTER, JR., | § |
|  | § |
|  | § |
| Pro Se Plaintiff, | § |
|  | § Civil Action No. 5: 18-CV-00682-DAE |
| V. | § |
|  | § |
| UNITED STATES OF AMERICA | § |
|  | § |
| Defendant. | § |

# Table of Contents

### Required Submission 08/01/2018

**Title**                                                                                    **Page**

Required Submission …………………………………………………………………………….....2
MEMS Report January 6, 2016…………………………………………..……………..……………………..4
Baptist Health discharge January 6, 2016…………………………………………………………………11
Baptist Health Report January 23, 2016 …………………………………………………………………15
AJ Raiber e-mail instructed to leave work January 7 -11, 2016 …………………..………………………30
HR Personnel E-mail January 27, 2016 …………………………………………………….…43
Kathryn Joiner compensation benefits disallowed March 9, 2016 …………………..….…..………….45
Appeal Board Decision and Order March 12, 2018 ..……………...…………………...…..………….62

**Prehearing Submission**

- I served in the military for 27 years and 15 years of Contracting experiences both military and civilian.

- I have a 100% service-connected VA disability rating.

- I am DAWAII Level III in Contracting, Logistic Lifecycle, Procurement, and Level I in Program Management.

- I have Master's, Bachelor's, and an Associate Degree.

- On January 6, 2016 at about 3:35 pm, I fell down the stairs upon leaving work at the end of my work shift.

- On January 7, 2016 at about 3:24 pm, I received an e-mail from Andrew Raiber instructed me to leave work. He also demanded that I contact him once I got to lodging.

- Before the incident I had been in contact with the agency since December 17, 2015 shortly after my left shoulder rotator cuff repair surgery. The agency kept giving me excuses on my requests for reasonable accommodation, telework for medication reasons, and Interim accommodation that they were still working on. The agency would not provide me with clear date on their decision. The reasonable accommodation requests started on February 9, 2015, this process only supposed to take less than 30 days. It's currently under the EEOC complaint process, set for mediation for settlement on August 15, 2018

- On March 9, 2016, Kathryn Joiner disallowed my compensation benefits based on these findings "Fact of Injury, because the evidence does not support that you sustained any diagnosed medical condition as a result of the alleged injury and acute narcotic intoxication."

- In the Baptist Health report dated January 23, 2016, the report stated that due to dizziness and nausea I slid down approximate 15 stairs. No mention of intoxication as Kathryn Joiner stated in her report.

- Only in the discharge document dated January 6, 2016 stated that the reasoning for visit was due to lightheadedness and Drug intoxication. **That was totally incorrect**.

- The agency agreed with Ms. Joiner decision concerning my compensation benefits to be disallowed because they all alleged that I were intoxicate, willful misconduct, and that I caused the injury to myself. The agency knew that the information was false, but still denied my compensation benefits for over 6 months.

Then, after the incident I was harassed and retaliated against for over the next year. Such as: Denied Advance leave, LWOP, Telework for disability and medical reasons. The agency refused to follow any of the doctor orders, the agency had ordered me to return to work, then they will order me to leave work. The agency had reclassified my position and downgraded me to a GS-5 from a GS-13. The agency had disapproved all my training, to include they tried to take away my Defense Acquisition Workforce Improvement Act (DAWIA) and Federal Acquisition Certification – Contracting (FAC-C) Level III contracting Certificates

Billy Julius Porter Jr
Retired (Army)



**Finalized: Yes**

## PATIENT

**Porter , Billy** 54 Years (Actual) Male **Ethnicity:** Not Hispanic/Latino **Race:** Black
**Chief Complaint:** Trauma - Fall;

### NARRATIVE

54 y/o M, A&Ox4 c/o L shoulder pain after a fall down some stairs. Pt reports he tripped and fell down 1 flight of stairs, no LOC. L arm is in a sling, and pt reports previous shoulder surgery, and feels sore after the fall. No other complaints or obvious trauma. PMSX4 and no deformity is seen. Pt was ambulatory after the fall. Vitals and assessment as noted. No changes enroute, t/o BHMC-NLR staff, transport without incident.

### SUBJECTIVE

|  | ACTUAL | PERTINENT NEGATIVES |
|---|---|---|
| Onset | **Date/Time:** 1/6/2016 15:44:00 |  |
| Allergies | **Medications:** Meperidine (Demerol HCL); |  |
| PMH | **Cardiac:** Hypertension; **GI/GU:** GERD; |  |

| Medication(s) | Dosage | Frequency | Compliant | Comments |
|---|---|---|---|---|
| list |  |  | Unknown |  |

### INJURY

| Type of Activity | Play/Leisure; |
|---|---|
| Incident Location | Public Building; |
| 1° MOI | Fall; **Type:** Caused by slip **Type:** Distance of Fall (Feet): 10 **Landed On:** Hard Surface ; |
| Safety Equipment Use | None; |
| Incident Type | Not Work-related; |
| Intent Of Injury | Unintentional; |

### FIRSTVITAL SIGNS

| Time | HR | RR | BP-Sys | BP-Dia | SPO2 | ETCO2 | Peak Flow | Gluc | TEMP | Pain: Visual | GCS | Position | Done By |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M- 1/6/2016 16:01:18 | 69 BPM | 14 BPM | 163 mmHG | 96 mmHG | 96 % - RA; |  |  |  |  |  | E 4 V 5 M 6 15 |  | MICHAEL GRIMES |

### INITIAL ASSESS - OBJECTIVE

|  | ACTUAL | PERTINENT NEGATIVES |
|---|---|---|
| Gen | Assessment Time: | 1/6/2016 15:59:58 |

| | INITIAL ASSESS - OBJECTIVE | | |
|---|---|---|---|
| | **Location Patient Found:** | Chair | |
| | **Scene Findings:** | None Noted; | |
| | **Barriers to Patient Care:** | None; | |
| | **Emergency Information:** | None; | |
| | **Alcohol/ Drug Use Indicators:** | None Observed; | |
| | **Level Of Consciousness:** | **Alert:**To person; To place; To time; To situation; | |
| A | **Airway Status:** | **Status::** Patent (Open); | |
| | **Airway Signs:** | Unremarkable; | |
| B | **Breathing Sounds:** | **Left Upper:** Clear; **Left Lower:** Clear; **Right Upper:** Clear; **Right Lower:** Clear; | |
| | **Breathing Signs:** | No Abnormal Breathing Signs; | |
| | **Breathing Quality:** | **Regularity:** Regular; **Effort:** Easy/ Normal; **Depth:** Normal; | |
| C | **Skin:** | **Temperature:** Warm; **Color:** Pink; **Moisture:** Dry; **Cap Refill:** Less Than 2 Seconds; **Turgor:** Normal; | |
| | **Pulse:** | **Site:** Radial; Carotid; **Rate:** Normal; **Rhythm:** Regular; **Strength:** Strong; | |
| | **Neck Veins:** | JVD Absent; | |
| | **Estimated Blood Loss:** | None; | |
| D | **Pupils:** | **(L): Reactivity:** Reactive; **Quality:** Normal;   **(R): Reactivity:** Reactive; **Quality:** Normal; | |
| | **Mental Status:** | Normal; | |
| | **Distal SMC:** | **All Extremeties:** Capillary Refill Present; Pulse Present; Movement Present; Sensation Present; | |
| | **Loss of Consciousness:** | **No;** | |
| Exam General | **CNS:** | | No Signs of Injury; |
| | **Head / Face:** | | No C-Spine Deformity; No C-Spine Tenderness; No Signs of Injury; |
| | **Thorax:** | | No Signs of Injury; |
| | **Abdomen:** | Softness; | No Signs of Injury; No Tenderness; |
| | **Pelvis:** | | No Signs of Injury; |

| INITIAL ASSESS - OBJECTIVE | | | |
|---|---|---|---|
| **Back/Spine:** | | | No Signs of Injury; |
| **Lower Extremities:** | Cap Refill Present; Coordination Present; Normal Motor Function; Normal motor function (bilat.); Normal Range of Motion; Normal sensation (bilat.); | | No Signs of Injury; |
| **Upper Extremities:** | Cap Refill Present; Coordination Present; Normal Motor Function; Normal motor function (bilat.); Normal Range of Motion; Normal sensation (bilat.); | | No Signs of Injury; |

### VITAL SIGNS

| Time | HR | RR | BP-Sys | BP-Dia | SPO2 | ETCO2 | Peak Flow | Gluc | TEMP | Pain: Visual | GCS | Position | Done By |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M-1/6/2016 16:01:18 | 69 BPM | 14 BPM | 163 mmHG | 96 mmHG | 96 % - RA; | | | | | | E 4 V 5 M 6 15 | | MICHAEL GRIMES |
| M-1/6/2016 16:14:41 | 68 BPM | 14 BPM | 160 mmHG | 95 mmHG | | | | | | | E 4 V 5 M 6 15 | | MICHAEL GRIMES |

### ASSESS/PLAN

| Start Time | Stop Time | Section | Item | Summary | Done By |
|---|---|---|---|---|---|
| 1/6/2016 16:07:06 | | Assessment | AVPU | AVPU: To person, To place, To time, To situation | MICHAEL GRIMES |
| 1/6/2016 16:07:06 | | Assessment | Airway Status | Status: Patent (Open) | MICHAEL GRIMES |
| 1/6/2016 16:07:07 | | Assessment | Breath Sounds | Left Upper: Clear; Left Lower: Clear; Right Upper: Clear; Right Lower: Clear | MICHAEL GRIMES |
| 1/6/2016 16:07:07 | | Assessment | Breathing Signs | Breathing Signs: No Abnormal Breathing Signs | MICHAEL GRIMES |
| 1/6/2016 16:07:08 | | Assessment | Distal SMC | All Extremeties: Capillary Refill Present, Pulse Present, Movement Present, Sensation Present | MICHAEL GRIMES |
| 1/6/2016 16:07:08 | | Assessment | Breathing Quality | Regularity: Regular; Effort: Easy/ Normal; Depth: Normal | MICHAEL GRIMES |
| 1/6/2016 16:07:08 | | Assessment | Mental Status | Status: Normal | MICHAEL GRIMES |
| 1/6/2016 16:07:09 | | Assessment | Neck Veins | Neck Veins: JVD Absent | MICHAEL GRIMES |
| | | | | Left Reactivity: Reactive; Left Quality: | |

Run Number: 16-1329

| 1/6/2016 16:07:09 | | Assessment | Pupils | Normal; Right Reactivity: Reactive; Right Quality: Normal | MICHAEL GRIMES |
|---|---|---|---|---|---|
| 1/6/2016 16:07:09 | | Assessment | Pulse Status | Site: Radial, Carotid; Rate: Normal; Rhythm: Regular; Strength: Strong | MICHAEL GRIMES |
| 1/6/2016 16:07:10 | | Assessment | Skin | Temperature: Warm; Moisture: Dry; Color: Pink; Cap Refill: Less Than 2 Seconds; Turgor: Normal | MICHAEL GRIMES |

### VEHICLE(S)

| MEMS | Agency Number | District/Region | Unit Number | Unit Call Sign | Vehicle Number | EMS Called By | Vehicle Type | Primary Role of Unit | Station |
|---|---|---|---|---|---|---|---|---|---|
| | | Metro | 611 | | | Bystander | ALS Emergency | ALS Transport | |

### CREW MEMBERS

| Name | Crew Role | Crew Level | Position | ID Number | Registration | Crew Type | Current Crew |
|---|---|---|---|---|---|---|---|
| Davidson Ross | Crew Member | EMT Basic | Secondary Crew | 27289 | 27289 | | Yes |
| GRIMES MICHAEL | Crew Member | EMT Paramedic | Primary Crew | | 23672 | | Yes |

### INCIDENT

| | Time | Odometer | Details | Complications / Misc |
|---|---|---|---|---|
| Incident Date / Time: | 1/6/2016 15:47:16 | | Location Type: Public Building; Address 1: 2200 FORT ROOTS DR Address 2: bldg 41 (big circle in old historic area) City / Town: NORTH LITTLE ROCK County: Pulaski Province / State: AR Zip / Postal Code: 72114 Country: U.S.A. | |
| PSAP: | | | | |
| Mission Decision: | | | | |
| Call Received: | | | | |
| Arrive Pickup: | | | | |
| Depart Pickup: | | | | |
| Pre-Alert: | | | | |
| Unit Dispatched: | 1/6/2016 15:47:44 | | Dispatch Complaint: Falls Type of Service Requested: | |

Run Number: 16-1329

| | | | Emergency - 911<br>**Location Type:** Public Building;<br>**Address 1:** 2200 FORT ROOTS DR<br>**Address 2:** bldg 41 (big circle in old historic area)<br>**City / Town:** NORTH LITTLE ROCK<br>**County:** Pulaski<br>**Province / State:** AR<br>**Zip / Postal Code:** 72114<br>**Country:** U.S.A. | |
|---|---|---|---|---|
| **Enroute:** | 1/6/2016 15:49:39 | | **Run Number:** 16-1329<br>**Response Mode:** Lights and Sirens; **Number of Patients:** 1 | |
| **Unit Cancelled:** | | | | |
| **Arrive Scene:** | 1/6/2016 15:57:32 | 79.20 mi | | **Other Services at Scene:** Fire - Other;<br>**Estimate Initial Responder on Scene:** < 5 Minutes;<br>**Outcome of the Prior Aid:** Unchanged;<br>**Prior Aid Performed By:** First Responder; |
| **Arrive Patient:** | | | | |
| **On Scene Transfer:** | | | | |
| **Depart Scene:** | 1/6/2016 16:08:26 | | **Departure Priority:** Non-Emergency; **Departure Mode:** No Lights or Sirens; | **Response Outcome:** Transported; |
| **RL ETA:** | | | | |
| **RL Alert:** | | | | |
| **Arrive Destination:** | 1/6/2016 16:27:49 | 86.20 mi | **Destination Type:** Hospital (ED);<br>**Address 1:** 3333 SPRINGHILL DR<br>**City / Town:** NORTH LITTLE ROCK<br>**County:** PULASKI<br>**Zip / Postal Code:** 72117<br>**Country:** U.S.A.<br>**Receiving Facility:** Baptist Med Center - NLR | |
| **Care Transfer:** | | | | |
| **Depart** | | | | |

Run Number: 16-1329

| Destination: | | | | | |
|---|---|---|---|---|---|
| Available: | 1/6/2016 16:36:02 | | | | |
| Unit Back at Home: | | | | | |
| Wheel Check: | | | | | |
| Arrive Scene 1: | | | | | |
| Arrive Scene 2: | | | | | |
| Depart Scene 1: | | | | | |
| Depart Scene 2: | | | | | |
| Total Miles: | | 7.00 mi | | | |

## OUTCOMES

### GENERAL

Condition of Patient at Destination: Unchanged;

### MISC.

### ATCC DATA

Patient ID Band / Tag Number: A702441;

Trauma Triage Category: Minor;

### DEMOGRAPHICS

**Last Name: Porter**            **First Name: Billy**            **Middle Name:**

DOB: **2/27/1961**                SSN: **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**            MedicAlert #:

Address1: 113 Brookbend         Address2:                       City: cibolo

County:                          State: Texas                    Zip: 78108

Country: U.S.A.                  Tel1:                           Tel2:

Driver's License #:              Place of Issue:

### NECESSITY FOR SERVICE                    CODES

Position Patient Found:          Sitting;

Patient Moved to Stretcher via:  Stand / Pivot;

Patient Transport Position:      Semi-Fowlers;

Patient Required:                Higher Level of Care;

### SIGNATURE

**Primary Crew Name: GRIMES MICHAEL**

Run Number: 16-1329

**Secondary Crew**
**Name:** Davidson Ross

**Patient Signature**
I, the undersigned, hereby authorize payment directly to Metropolitan Emergency Medical Services (MEMS), 1101 W. 8th St., Little Rock, AR 72203, for the ambulance benefits otherwise payable to me whether in the past, now, and in the future. I hereby authorize MEMS to release any information regarding my ambulance transportation to any insurance company or employer having coverage on me. If I am entitled to Medicare benefits, I authorize any medical or other information to be released to the Social Security Administration CMS, its intermediaries or carriers, whether in the past, now, and in the future. I authorize any holder of information about me to release to MEMS, any information or documentation needed to determine these benefits or benefits paid for related services provided to me by MEMS, whether in the past, now, or in the future. I understand that this authorization can be revoked at any time by writing MEMS and revoking the same. I understand I am financially responsible to MEMS for charges not covered by this authorization, and do hereby guarantee payment of this bill. I further agree that if collection is made by suit, or otherwise, I will pay all collection costs including a reasonable attorney's fee. I hereby release said MEMS and employees from any claim whatsoever. I hereby acknowledge receipt of MEMS privacy Policies.

Run Number: 16-1329

 **Baptist Health**

BHMC NORTH LITTLE ROCK
3333 Springhill Drive
North Little Rock AR 72117-2922
AVS

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C:

Porter, Billy MRN: 02136122 (CSN: 62762562) (54 y.o. M) (Adm: 01/06/16)

NR 9X ED-ER22-22

Baptist Health Medical Center

# Summary of your Hospitalization

**About your hospitalization**

You were admitted on: N/A
You were discharged on: January 6, 2016

You last received care in the: NR EMERGENCY
Unit phone number: 501-202-6800

**Diagnoses this visit**

Your diagnoses were Lightheadedness and Drug intoxication.

**Physicians who cared for you during your hospitalization**

| Provider | ED Prov | Service | Role | From | To | Primary office phone |
|----------|---------|---------|------|------|-----|----------------------|
| Dannetta Grisham, MD | Yes | Emergency Medicine | Attending Provider | 01/06/16 1907 | -- | 501-202-6800 |

**You are allergic to the following**

| Allergen | Reactions |
|----------|-----------|
| Demerol (Meperidine) | Hives |

# Medications

Based on the information you provided to us as well as any changes during this visit, the following is your updated medication list. Compare this with your prescription bottles at home. Any medications that were sent electronically to your pharmacy are listed below. Please take this After Visit Summary to the pharmacy when you pick up your prescriptions. If you have any questions or concerns, contact your primary care physician's office. If for any reason you are unable to get your medications or inhalers and you were discharged from the Little Rock hospital, please call us immediately at 501-202-2039. If for any reason you are unable to get your medications or inhalers and you were discharged from the Arkadelphia, Conway, Heber Springs, Hot Spring County, North Little Rock, or Stuttgart hospital, please call us immediately at 501-202-3843.

**Your Medications**

**ASK your Doctor about these medications**

| | | | | | |
|--|--|--|--|--|--|
| **allopurinol 300 mg tablet**<br>Dose: 300 mg<br>Take 300 mg by mouth daily.<br>Commonly known as: ZYLOPRIM | | | | | |
| **amLODIPine 10 mg tablet**<br>Dose: 10 mg<br>Take 10 mg by mouth daily.<br>Commonly known as: NORVASC | | | | | |

| atenolol 25 mg tablet<br>Dose: 25 mg<br>Take 25 mg by mouth daily.<br>Commonly known as: TENORMIN | | | | | | |
|---|---|---|---|---|---|---|
| cetirizine 10 mg tablet<br>Dose: 10 mg<br>Take 10 mg by mouth daily.<br>Commonly known as: ZYRTEC | | | | | | |
| cyclobenzaprine 5 mg tablet<br>Dose: 5 mg<br>Take 5 mg by mouth 3 (three) times daily as needed<br>for Muscle spasms.<br>Commonly known as: FLEXERIL | | | | | | |
| escitalopram oxalate 20 mg tablet<br>Dose: 20 mg<br>Take 20 mg by mouth daily.<br>Commonly known as: LEXAPRO | | | | | | |
| HYDROcodone-acetaminophen 10-325 mg per<br>tablet<br>Dose: 1 tablet<br>Take 1 tablet by mouth every 6 (six) hours as<br>needed for Moderate Pain.<br>Commonly known as: NORCO | | | | | | |
| naproxen 500 mg tablet<br>Dose: 500 mg<br>Take 500 mg by mouth 2 (two) times daily with<br>meals.<br>Commonly known as: NAPROSYN | | | | | | |
| omeprazole 20 mg capsule<br>Dose: 20 mg<br>Take 20 mg by mouth daily.<br>Commonly known as: PRILOSEC | | | | | | |
| tamsulosin 0.4 mg 24 hr capsule<br>Dose: 0.4 mg<br>Take 0.4 mg by mouth daily.<br>Commonly known as: FLOMAX | | | | | | |
| traMADol 50 mg tablet<br>Dose: 50 mg<br>Take 50 mg by mouth every 6 (six) hours as needed<br>for Moderate Pain.<br>Commonly known as: ULTRAM | | | | | | |

# Instructions for after Discharge

**Additional Information**



DOY: E.

# Fax

Baptist Health Medical Center
Little Rock/Rehab Institute/Extended Care
9601 Baptist Health Drive
Little Rock, AR 72205-7299
(501) 202-2000

Date:1/23/16

URGENT CARE

Heber Springs,

Attn to: adrianna

Subject: Request for Medical Records

Comments: You are receiving this in response to a request for medical record information.

NOTICE: THE FOLLOWING INFORMATION IS CONFIDENTIAL.

This information has been disclosed to you from records whose confidentiality is protected by the disclosing facility. You are prohibited from making any further disclosure without the specific written consent of the person to whom it pertains.

Please contact the HIM Department located at the hospital you requested information for any questions.

Baptist Health Little Rock (501) 202-1914



| | BHMC NORTH LITTLE ROCK | PORTER,BILLY |
| | 3333 Springhill Drive | MRN: 02136122 |
| | North Little Rock, AR 72117-2902 | DOB: 2/27/1961, Sex: M |
| | Abstract Report | Adm: 1/6/2016, D/C: 1/6/2016 |

## Porter, Billy (CSN #:62762562) (54 y.o. M)  POP: None                NR 9X ED-EB22-22

Review Complete On: 1/6/2016 By: Sherri
Renae Carter-Wyatt, MD

### Allergies as of 1/6/2016

| Allergen | Noted | Reaction Type | Reactions |
| Demerol (Meperidine) | 01/06/2016 | | Fever |

### Admission Information

| Attending Provider | Admitting Provider | Admission Type | Admission Date/Time |
| | | Urgent | 01/06/16  18:40 |
| Discharge Date/Time | Hospital Service | Admit Cert Status | Service Area |
| 01/06/16  19:01 | Emergency Medicine | Inpatient | BHMC NP-HVRGE AREA |
| Unit | Room/Bed | Admission Source | Referring Provider |
| NR EMERGENCY | EMERG | Physician/Clinic Referral | |

### Discharge Information

| Discharge Provider | Date Time | Disposition | Destination |
| (none) | 01/06/16 19:01 | Home or Self-Care | (none) |

### Discharge Summaries

No notes of this type exist for this encounter.

### ED Notes

#### ED Triage Note by Rebekah D. Ahillen, RN at 1/6/2016  4:47 PM

| Author: Rebekah D. Ahillen, RN | Service: (none) | Author Type: Registered Nurse |
| Filed: 1/6/2016  4:48 PM | Note Time: 1/6/2016  4:47 PM | Status: Signed |
| Editor: Rebekah D. Ahillen, RN (Registered Nurse) | | |

C/O dizziness and fall today while at work at the VA. Dizziness x 1 day. + nausea. States slid down approx. To state. Reports left shoulder surgery.

Electronically signed by Rebekah D. Ahillen, RN on 1/6/2016  4:48 PM

#### ED Provider Notes by Dannella Grisham, MD at 1/6/2016  7:30 PM

| Author: Dannella Grisham, MD | Service: Emergency Medicine | Author Type: Physician |
| Filed: 1/6/2016  7:37 PM | Note Time: 1/6/2016  7:30 PM | Status: Addendum |
| Editor: Dannella Grisham, MD (Physician) | | |
| Related notes:   Original Note by Dannella Grisham, MD (Physician) filed at 1/6/2016  7:37 PM |

### History

Chief Complaint
Patient presents with
 • Fall
 • Dizziness

HPI Comments: Patient is the ER has about he fall at work. He says he works as a supervisor over a project of the VA. He foundation is too round, but he lives here when he is standing. He is wearing a standard immobilizer on his left shoulder from surgery about a month ago. He says that his shoulder has been bothering him more so he took 2x day of hydrocodone which he got at work and it was that took 14 more. He said he has had 1 more dose after that and then had a fall at work because he felt lightheaded. He said he did not



Baptist Health          88845 NORTH LITTLE ROCK              FOURTH BETTY
                        3332 Springhill Drive                MRN: 02136122
                        North Little Rock AR 72117-3427       DOB: 2/27/1961, Sex: M
                        Abstract Report                       Adm: 1/6/2016, D/C: 1/6/2016

## ED Notes (continued)

ED Provider Notes by Georgia Graham, MD at 1/6/2016 7:46 PM (continued)
have any injury from his fall said while he was waiting here to be seen he took 2 more 10 mg hydrocodone
because of the pain. Says he is not taking he has been working daily since this he is accompanied by his
wife. He does have hypertension but states it not that his blood pressure meds this today

History reviewed. No pertinent past medical history

Past Surgical History
                                                                        ...
  • Patient con reports

History reviewed. No pertinent family history

Family
  • No known family history
  • Smoking status                          Never Smoker
  • Smokeless tobacco use                   Not on file
  • Alcohol Use                             No

Review of Systems
Constitutional: Negative for fever
Eyes: Negative for visual disturbance
Respiratory: Negative for shortness of breath
Cardiovascular: Negative for chest pain
Gastrointestinal: Negative for abdominal pain
Genitourinary: Negative for difficulty urinating
Musculoskeletal: Negative for ... pain
Skin: Negative for color change
Neurological: Positive for ... Negative for numbness and headache
Hematological: Does not bruise/bleed easily
Psychiatric: Behavioral: Negative for confusion

## Physical Exam

BP 158/91 (mmHg) | Pulse 94 | Temp(Src) 98.1 F (36.8) (Oral) | Resp 20 | SpO2 10" (1.778 m) | Wt 28 kg
(64.42) kg/ [BMI 33.00 kg/m2] | SpO2 97% .

## Physical Exam

Constitutional: He is oriented to person, place and time. He appears well-developed and well-nourished. He
is dress
Alert and oriented stands and walks well he has slightly slurred speech and is obviously somewhat
sleepy.
HENT:
Head: Normocephalic and atraumatic
Right Ear: External ear normal
Left Ear: External ear normal
Neck: Neck normal

 Baptist Health

BHMC NORTH LITTLE ROCK
3333 Springhill Drive
North Little Rock AR 72117-2922
Abstract Report

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C: 1/6/2016

## ED Notes (continued)

ED Provider Notes by Dannetta Grisham, MD at 1/6/2016  7:36 PM (continued)
Mouth/Throat: Oropharynx is clear and moist. No oropharyngeal exudate
Eyes: Conjunctivas and EOM are normal. Pupils are equal, round, and reactive to light. Right eye exhibits no discharge. Left eye exhibits no discharge. No scleral icterus.
Neck: Normal range of motion. Neck supple.
Cardiovascular: Normal rate, regular rhythm, normal heart sounds and intact distal pulses.
No murmur heard.
Pulmonary/Chest: Effort normal and breath sounds normal. No respiratory distress. He has no wheezes. He has no rales. He exhibits no tenderness.
Abdominal: Soft. Bowel sounds are normal. He exhibits no distention. There is no tenderness. There is no rebound and no guarding.
Musculoskeletal: Normal range of motion. He exhibits no edema or tenderness
Neurological: He is alert and oriented to person, place, and time. He has normal reflexes. He displays normal reflexes. No cranial nerve deficit. Coordination normal.
Skin: Skin is warm and dry. No rash noted. He is not diaphoretic. No erythema. There is pallor.
Psychiatric: He has a normal mood and affect. His behavior is normal. Judgment and thought content normal.
Vitals reviewed


ED Course  I have explained to the patient his wife that I do not think he needs to be taking that much medicine certainly does not need to be taking it and working. He obviously is sleepy from this, and a fall would not be I would likely I recommend he take is blood pressure medicine as directed he decreased amount of narcotics that he is taking intake no narcotics while he is working. He will be discharged is with home with his wife he understands the plan and states he will follow.
Procedures

## MDM
Number of Diagnoses or Management Options
Acute narcotic intoxication:
Lightheaded:


Assessment / Plan

Billy Porter is diagnosed with
1.    Lightheaded
2.    Acute narcotic intoxication
and will be discharged on
## New Prescriptions
No medications on file
to follow-up with No follow-up provider specified..


Dannetta Grisham, MD
01/06/16 1937

**Baptist Health**          BHMC NORTH LITTLE ROCK          PORTER,BILLY
                             3333 Springhill Drive           MRN: 02136122
                             North Little Rock AR 72117-2922  DOB: 2/27/1961, Sex: M
                             Abstract Report                 Adm: 1/6/2016, D/C: 1/6/2016

## ED Notes (continued)

### ED Provider Notes by Dannetta Grisham, MD at 1/6/2016  7:20 PM (continued)

Dannetta Grisham, MD
01/06/16 1937

   Electronically signed by Dannetta Grisham, MD on 1/6/2016  7:37 PM

---

### History & Physicals
   No notes of this type exist for this encounter.

### Short Stay Summaries
   No notes of this type exist for this encounter.

### Progress Notes
   No notes of this type exist for this encounter.

### Consult Notes
   No notes of this type exist for this encounter.

### Operative Notes
   No notes of this type exist for this encounter.

### Anesthesia Notes
   No notes of this type exist for this encounter.

## Procedure Notes

### Procedures signed by Hpf Links at 1/22/2016 12:42 PM
   Author: Hpf Links                    Service: (none)            Author Type: Other
   Filed: 1/22/2016 12:42 PM            Note Time: 1/22/2016 12:42 PM   Status: Addendum
   Editor: Hpf Links (Other)
   Related Notes:    Original Note by Hpf Links (Other) filed at 1/22/2016  7:11 PM
      Scan on 1/22/2016 12:42 PM by Hpf Links (Other)



BHMC NORTH LITTLE ROCK                    PORTER BETTY
3100 Springhill Drive                     MRN: 02436122
North Little Rock, AR 72117-2972          DOB: 3/17/1961, Sex: F
Patient Report                            Adm: 1/6/2016, D/C: 1/6/2016

## Procedure Notes (continued)

Procedures signed by Rpt Links at 1/22/2016 12:42 PM (continued)



**Discharge Instructions**

He do not need to work while taking her narcotics. Takes only 1 pain pill every 4 to 6 hours for discomfort, none tonight. See your orthopedic doctor can Texas for recheck of your shoulder. You need to have your blood pressure rechecks in the next 2- 3 days. I recommend you call to get establish with a local doctor since your working and Arkansas. Return with new problems or concerns.

Call 1-888-BAPTIST to get a primary care doctor to follow up with in the next few days.

## Additional Information about your Hospitalization

**Height and Weight**

Height: 5' 10" (177.8 cm)

Weight: (!) 230 lb (104.327 kg)

Height Method: Stated
Weight Method: Stated

**Current Immunizations**                                                     Never Reviewed

No immunizations on file.

**Patient Lines/Drains/Airways Status**

Active Lines, Drains, and Airways
                                              **None**

**Additional Information**

Contact your Primary Care Physician and notify of discharge from hospital. Obtain follow-up appointment, pending lab and/or test results. These discharge documents have been sent to your post hospital provider and the Physician's listed on your medical record within 24 hours of discharge. You may also contact the hospital Medical Records department at 501-202-1914 for instructions on how to receive a copy of the results.

MyChart:
MyChart Baptist Health offers patients on-line access to portions of their medical records. It enables you to securely use the Internet to view, download or transmit information about your health care. You can also view your account balance and make online payments.
To request a MyChart Baptist Health logon, go to https://mychart.baptist-health.org

If you experience new or unrelieved symptoms such as pain, nausea or vomiting, shortness of breath or temperature greater than 101 call your PHYSICIAN'S office. In case of an EMERGENCY call 911 or go to the nearest Emergency Room.

Baptist Health Website: www.baptist-health.com
Baptist Health Healthline: 1-888-BAPTIST

General Information to All Patients Regarding Suicide Warning Signs:
The following signs may mean someone is at risk for suicide.
 If you or someone you know exhibits any of these signs, seek help as soon as possible by calling the Suicide Prevention Lifeline at 1-800-273-TALK (8255).
Website: www.suicidepreventionlifeline.org.
1. Talking about wanting to die or to kill themselves. 2. Looking for a way to kill themselves, such as searching online or buying a gun. 3. Talking about feeling: hopeless, trapped, having no reason to live, being a burden to others, or unbearable pain. 4. Increasing the use of alcohol or drugs. 5. Acting anxious or

agitated; behaving recklessly. 6. Sleeping too little or too much. 7. Withdrawing or isolating themselves. 8. Showing rage or talking about seeking revenge. 9. Displaying extreme mood swings.

Patient Signature: _____

Date: _____

# Fax



**Baptist Health Medical Center**
**Little Rock/Rehab Institute/Extended Care**
**9601 Baptist Health Drive**
**Little Rock, AR 72205-7299**
**(501) 202-2000**

Date:1/23/16

URGENT CARE

Heber Springs,

Attn to: adrianna

Subject: Request for Medical Records

Comments: You are receiving this in response to a request for medical record information.

## NOTICE: THE FOLLOWING INFORMATION IS CONFIDENTIAL

**This information has been disclosed to you from records whose confidentiality is protected by the disclosing facility. You are prohibited from making any further disclosure without the specific written consent of the person to whom it pertains.**

Please contact the HIM Department located at the hospital you requested information for any questions.

Baptist Health Little Rock-(501) 202-1914

 **Baptist Health**

| | | |
|---|---|---|
| BHMC NORTH LITTLE ROCK | PORTER,BILLY | |
| 3333 Springhill Drive | MRN: 02136122 | |
| North Little Rock AR 72117-2922 | DOB: 2/27/1961, Sex: M | |
| Abstract Report | Adm: 1/6/2016, D/C: 1/6/2016 | |

**Porter, Billy (CSN #:62762562)  (54 y.o. M)   PCP: None**                    NR 9X ED-ER22-22

Review Complete On: 1/6/2016 By: Sherri
**Allergies as of 1/6/2016**                                          Renae Carter-Wyatt, MD

| Allergen | Noted | Reaction Type | Reactions |
|---|---|---|---|
| **Demerol [Meperidine]** | 01/06/2016 | | Hives |

**Admission Information**

| Attending Provider | Admitting Provider | Admission Type | Admission Date/Time |
|---|---|---|---|
| | | Urgent | 01/06/16 1840 |
| Discharge Date/Time | Hospital Service | Auth/Cert Status | Service Area |
| 01/06/16 1943 | Emergency Medicine | Incomplete | BHMC SERVICE AREA |
| Unit | Room/Bed | Admission Status | Referring Provider |
| NR EMERGENCY | ER22/22 | Discharged (Confirmed) | |

**Discharge Information**

| Discharge Provider | Date/Time | Disposition | Destination |
|---|---|---|---|
| (none) | 01/06/16 1943 | Home or Self Care | (none) |

**Discharge Summaries**

No notes of this type exist for this encounter.

## ED Notes

**ED Triage Note by Rebekah D. Ahillen, RN at 1/6/2016  4:47 PM**

| Author: Rebekah D. Ahillen, RN | Service: (none) | Author Type: Registered Nurse |
|---|---|---|
| Filed: 1/6/2016  4:48 PM | Note Time: 1/6/2016  4:47 PM | Status: Signed |
| Editor: Rebekah D. Ahillen, RN (Registered Nurse) | | |

C/O dizziness and fall today while at work at the VA. Dizziness x 1 day. + nausea. States slid down approx 15 stairs. Recent left shoulder surgery.

Electronically signed by Rebekah D. Ahillen, RN on 1/6/2016 4:48 PM

**ED Provider Notes by Dannetta Grisham, MD at 1/6/2016  7:30 PM**

| Author: Dannetta Grisham, MD | Service: Emergency Medicine | Author Type: Physician |
|---|---|---|
| Filed: 1/6/2016  7:37 PM | Note Time: 1/6/2016  7:30 PM | Status: Addendum |
| Editor: Dannetta Grisham, MD (Physician) | | |
| Related Notes:    Original Note by Dannetta Grisham, MD (Physician) filed at 1/6/2016  7:37 PM | | |

## History

Chief Complaint
Patient presents with
- Fall
- Dizziness

**HPI Comments:** Patient to the ER because he fell at work. He says he works as a supervisor over a project at the VA. His hometown is San Antonio but he lives here when he is working. He is wearing a shoulder immobilizer on his left shoulder from surgery about a month ago. He says that his shoulder has been bothering him more so he took 20 mg of hydrocodone when he got to work and 4 hours later took 20 more. He said he has had 1 more dose after that and then had a fall at work because he felt lightheaded. He said he did not

 **Baptist Health**

BHMC NORTH LITTLE ROCK
3333 Springhill Drive
North Little Rock AR 72117-2922
Abstract Report

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C: 1/6/2016

## ED Notes (continued)

### ED Provider Notes by Dannetta Grisham, MD at 1/6/2016 7:30 PM (continued)

have any injury from his fall said while he was waiting here to be seen he took 2 more 10 mg hydrocodone because of the pain. Says he is not driving he has been working daily since this he is accompanied by his wife. He does have hypertension but again did not take his blood pressure medicines today.

History reviewed. No pertinent past medical history.

**Past Surgical History**

| Procedure | Laterality | Date |
|---|---|---|
| • Rotator cuff repair | | |

History reviewed. No pertinent family history.

**History**

Substance Use Topics
- Smoking status:        Never Smoker
- Smokeless tobacco:     Not on file
- Alcohol Use:           No

Review of Systems
Constitutional: Negative for fever.
Eyes: Negative for visual disturbance.
Respiratory: Negative for shortness of breath.
Cardiovascular: Negative for chest pain.
Gastrointestinal: Negative for abdominal pain.
Genitourinary: Negative for difficulty urinating.
Musculoskeletal: Negative for myalgias and neck pain.
Skin: Negative for color change.
Neurological: Positive for light-headedness. Negative for numbness and headaches.
Hematological: Does not bruise/bleed easily.
Psychiatric/Behavioral: Negative for confusion.

**Physical Exam**
BP 159/92 mmHg | Pulse 68 | Temp(Src) 98.3 °F (36.8 °C) (Oral) | Resp 20 | Ht 5' 10" (1.778 m) | Wt 230 lb (104.327 kg) | BMI 33.00 kg/m2 | SpO2 97%

Physical Exam
Constitutional: He is oriented to person, place, and time. He appears well-developed and well-nourished. No distress.
**Alert gentleman stands and walks well he has slightly slurred speech and is obviously somewhat sleepy.**
HENT:
Head: Normocephalic and atraumatic.
Right Ear: External ear normal.
Left Ear: External ear normal.
Nose: Nose normal.

 **Baptist Health**    BHMC NORTH LITTLE ROCK         PORTER,BILLY
3333 Springhill Drive                  MRN: 02136122
North Little Rock AR 72117-2922        DOB: 2/27/1961, Sex: M
Abstract Report                        Adm: 1/6/2016, D/C: 1/6/2016

## ED Notes (continued)

### ED Provider Notes by Dannetta Grisham, MD at 1/6/2016 7:30 PM (continued)

Mouth/Throat: Oropharynx is clear and moist. No oropharyngeal exudate.

Eyes: Conjunctivae and EOM are normal. Pupils are equal, round, and reactive to light. Right eye exhibits no discharge. Left eye exhibits no discharge. No scleral icterus.

Neck: Normal range of motion. Neck supple.

Cardiovascular: Normal rate, regular rhythm, normal heart sounds and intact distal pulses. No murmur heard.

Pulmonary/Chest: Effort normal and breath sounds normal. No respiratory distress. He has no wheezes. He has no rales. He exhibits no tenderness.

Abdominal: Soft. Bowel sounds are normal. He exhibits no distension. There is no tenderness. There is no rebound and no guarding.

Musculoskeletal: Normal range of motion. He exhibits no edema or tenderness.

Neurological: He is alert and oriented to person, place, and time. He has normal reflexes. He displays normal reflexes. No cranial nerve deficit. Coordination normal.

Skin: Skin is warm and dry. No rash noted. He is not diaphoretic. No erythema. There is pallor.

Psychiatric: He has a normal mood and affect. His behavior is normal. Judgment and thought content normal. Vitals reviewed.

ED Course  I have explained to the patient his wife that I do not think he needs to be taking that much medicine certainly does not need to be taking it and working. He obviously is sleepy from this  and a fall would not be I would likely I recommend he take is blood pressure medicine as directed he decreased amount of narcotics that he is taking intake no narcotics while he is working.  He will be discharged is with home with his wife he understands the plan and states he will follow.

Procedures

## MDM

Number of Diagnoses or Management Options
Acute narcotic intoxication:
Lightheaded:

## Assessment / Plan

Billy Porter is diagnosed with

1. **Lightheaded**
2. Acute narcotic intoxication

and will be discharged on

## New Prescriptions

No medications on file

to follow-up with No follow-up provider specified..

Dannetta Grisham, MD
01/06/16 1937

 **Baptist Health**

BHMC NORTH LITTLE ROCK
3333 Springhill Drive
North Little Rock AR 72117-2922
Abstract Report

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C: 1/6/2016

## ED Notes (continued)

### ED Provider Notes by Dannetta Grisham, MD at 1/6/2016 7:30 PM (continued)

Dannetta Grisham, MD
01/06/16 1937

Electronically signed by Dannetta Grisham, MD on 1/6/2016 7:37 PM

## History & Physicals
No notes of this type exist for this encounter.

## Short Stay Summaries
No notes of this type exist for this encounter.

## Progress Notes
No notes of this type exist for this encounter.

## Consult Notes
No notes of this type exist for this encounter.

## Operative Notes
No notes of this type exist for this encounter.

## Anesthesia Notes
No notes of this type exist for this encounter.

## Procedure Notes

### Procedures signed by Hpf Links at 1/22/2016 12:42 PM

| | | |
|---|---|---|
| Author: Hpf Links | Service: (none) | Author Type: Other |
| Filed: 1/22/2016 12:42 PM | Note Time: 1/22/2016 12:42 PM | Status: Addendum |
| Editor: Hpf Links (Other) | | |

Related Notes:   Original Note by Hpf Links (Other) filed at 1/7/2016 7:11 PM
    Scan on 1/22/2016 12:42 PM by Hpf Links (below)



**Baptist Health**

BHMC NORTH LITTLE ROCK
3333 Springhill Drive
North Little Rock AR 72117-2922
Abstract Report

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C: 1/6/2016

## Procedure Notes (continued)

### Procedures signed by Hpf Links at 1/22/2016 12:42 PM   (continued)



**Baptist Health**

BHMC NORTH LITTLE ROCK
3333 Springhill Drive
North Little Rock AR 72117-2922
Abstract Report

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C: 1/6/2016

## Procedure Notes (continued)

### Procedures signed by Hpf Links at 1/22/2016 12:42 PM  (continued)



 **Baptist Health**

| | |
|---|---|
| BHMC NORTH LITTLE ROCK | PORTER,BILLY |
| 3333 Springhill Drive | MRN: 02136122 |
| North Little Rock AR 72117-2922 | DOB: 2/27/1961, Sex: M |
| Abstract Report | Adm: 1/6/2016, D/C: 1/6/2016 |

## Procedure Notes (continued)

### Procedures signed by Hpf Links at 1/22/2016 12:42 PM  (continued)

Electronically signed by Hpf Links on 1/22/2016 12:42 PM

---

## ECG - All Results

Resulted: 01/06/16 1712, Result status:
Preliminary result

**EKG 12 Lead [165491308]**

| | | | |
|---|---|---|---|
| Ordering provider: | Sherri Renae Carter-Wyatt, MD | Resulting lab: | BHMC MUSE |
| | 01/06/16 1652 | | |
| Narrative: | Test Reason ; | | |

Vent. Rate : 058 BPM    Atrial Rate : 058 BPM
P-R Int : 152 ms        QRS Dur : 086 ms
QT Int : 440 ms         P-R-T Axes : 047 -28 -27 degrees
QTc Int : 431 ms

Sinus bradycardia
Minimal voltage criteria for LVH, may be normal variant
Cannot rule out Anterior infarct , age undetermined
Abnormal ECG
No previous ECGs available

Referred By:        Confirmed By:

### Specimen Information

| Type | Source | Collected On |
|---|---|---|
| | | 01/06/16 1712 |

### Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| Ventricular Rate EKG/Min | 58 | BPM | | . | 14 |
| Atrial Rate | 58 | BPM | | - | 14 |
| QRS-Interval (MSEC) | 86 | ms | | - | 14 |
| QT-Interval (MSEC) | 440 | ms | | - | 14 |
| QTc | 431 | ms | | ^ | 14 |
| P Axis | 47 | degrees | | ? | 14 |
| R Axis | -28 | degrees | | - | 14 |
| T Axis | -27 | degrees | | ? | 14 |

Resulted: 01/22/16 1240, Result status: Final
result

**EKG 12 Lead [165491308]**

| | | | |
|---|---|---|---|
| Ordering provider: | Sherri Renae Carter-Wyatt, MD | Resulting lab: | BHMC MUSE |
| | 01/06/16 1652 | | |
| Narrative: | Test Reason : | | |

Vent. Rate : 058 BPM    Atrial Rate : 058 BPM
P-R Int : 152 ms        QRS Dur : 086 ms
QT Int : 440 ms         P-R-T Axes : 047 -28 -27 degrees
QTc Int : 431 ms

 **Baptist Health**   BHMC NORTH LITTLE ROCK
3933 Springhill Drive
North Little Rock AR 72117-2922
Abstract Report

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C: 1/6/2016

## ECG - All Results (continued)

Resulted: 01/22/16 1240, Result status: Final
result

### EKG 12 Lead [165491308] (continued)

Sinus bradycardia
Minimal voltage criteria for LVH, may be normal variant
Cannot rule out Anterior infarct , age undetermined
Abnormal ECG
No previous ECGs available
Confirmed by CALDWELL MD, CHARLES (2449) on 1/22/2016 12:40:13 PM

Referred By;          Confirmed By:CHARLES CALDWELL MD

#### Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
|      |        | 01/06/16 1712 |

#### Components

| | Value | Ref range | Flag | Comment | Lab |
|-----|-------|-----------|------|---------|-----|
| Ventricular Rate EKG/Min | 58 | BPM | | - | 14 |
| Atrial Rate | 58 | BPM | | - | 14 |
| QRS-Interval (MSEC) | 86 | ms | | - | 14 |
| QT-Interval (MSEC) | 440 | ms | | - | 14 |
| QTc | 431 | ms | | - | 14 |
| P Axis | 47 | degrees | | - | 14 |
| R Axis | -28 | degrees | | - | 14 |
| T Axis | -27 | degrees | | - | 14 |

## Imaging - All Results

Resulted: 01/06/16 1835, Result status: In
process

### XR Chest 1 Vw AP [165491309]

| Ordering provider: | Sherri Renae Carter-Wyatt, MD 01/06/16 1652 | Resulted by: | Alan D Williams, MD |
|---|---|---|---|
| Performed: | 01/06/16 1655 - 01/06/16 1837 | Resulting lab: | BHMC IMAGECAST |

#### Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
|      |        | 01/06/16 1655 |

Resulted: 01/06/16 1838, Result status: In
process

### XR Chest 1 Vw AP [165491309]

| Ordering provider: | Sherri Renae Carter-Wyatt, MD 01/06/16 1652 | Resulted by: | Alan D Williams, MD |
|---|---|---|---|
| Performed: | 01/06/16 1655 - 01/06/16 1837 | Resulting lab: | BHMC IMAGECAST |

#### Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
|      |        | 01/06/16 1655 |

Resulted: 01/06/16 2355, Result status: Final
result

### XR Chest 1 Vw AP [165491309]

| Ordering provider: | Sherri Renae Carter-Wyatt, MD | Resulted by: | Alan D Williams, MD |
|---|---|---|---|

 **Baptist Health**
BHMC NORTH LITTLE ROCK          PORTER,BILLY
3333 Springhill Drive                    MRN: 02136122
North Little Rock AR 72117-2922          DOB: 2/27/1961, Sex: M
Abstract Report                          Adm: 1/6/2016, D/C: 1/6/2016

## Imaging - All Results (continued)

Resulted: 01/06/16 2355, Result status: Final
result

**XR Chest 1 Vw AP [165491309] (continued)**

                    01/06/16 1852
Performed:          01/06/16 1855 - 01/06/16 1837        Resulting lab:   BHMC IMAGECAST
Narrative:                    BAPTIST HEALTH MEDICAL CENTER-NORTH LITTLE ROCK

NAME: BILLY PORTER          ATT PHY:
MRN : 02136122             SEX: M  RACE: 2
CASE: 82762592             DOB: 02-27-1961
ADM DATE: 01-06-2016       DICTATED: 01-06-2016 1846
DIS DATE: 01-06-2016       DICT PHY: ALAN  D WILLIAMS
TYPE: RADIOLOGICAL EXAMINATION

01/06/2016 1835 hours

Examination - PA chest x-ray.

History - Dizziness.

Comparison - None.

Findings - The heart size is upper limits of normal. No congestion
or evidence of failure is seen. The lung volumes are slightly
shallow with mild streaky bibasilar opacities. No left effusion or
pneumothorax is seen. A trace right effusion is suspected. The
osseous structures appear intact.

Impression -
1. There is shallow lung inflation with mild bibasilar streaky
   opacity, suggesting atelectasis. There is also concern for trace
   right effusion.
2. The heart size is upper limits of normal without evidence of
   failure.

Location 1 - This report was generated at Baptist Health Medical
Center/Little Rock.

This document has passed e.s. verification 1/6/2016 11:52 PM
ALAN D WILLIAMS, M.D./wj 0100
RADIOLOGY REPORT
Accession # 0900165491309  (Job # 483049)  (REPORT # 10720774)

**Specimen Information**

| Type | Source | Collected On |
|---|---|---|
|  |  | 01/06/16 1855 |

## Lab - All Results

 **Baptist Health**

BHMC NORTH LITTLE ROCK
3333 Springhill Drive
North Little Rock AR 72117-2922
Abstract Report

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C: 1/6/2016

## Imaging - All Results (continued)

Resulted: 01/06/16 1812, Result status: In process

### BUN [165491302]

| Ordering provider: | Sherri Renae Carter-Wyatt, MD 01/06/16 1652 | Resulting lab: | BHMC LAB |

Specimen Information

| Type | Source | Collected On |
| Blood | | 01/06/16 1750 |

Resulted: 01/06/16 1812, Result status: In process

### CBC and differential [165491300]

| Ordering provider: | Sherri Renae Carter-Wyatt, MD 01/06/16 1652 | Resulting lab: | BHMC LAB |

Specimen Information

| Type | Source | Collected On |
| Blood | | 01/06/16 1750 |

Resulted: 01/06/16 1812, Result status: In process

### Electrolyte panel [165491301]

| Ordering provider: | Sherri Renae Carter-Wyatt, MD 01/06/16 1652 | Resulting lab: | BHMC LAB |

Specimen Information

| Type | Source | Collected On |
| Blood | | 01/06/16 1750 |

Resulted: 01/06/16 1812, Result status: In process

### Creatinine, serum [165491303]

| Ordering provider: | Sherri Renae Carter-Wyatt, MD 01/06/16 1652 | Resulting lab: | BHMC LAB |

Specimen Information

| Type | Source | Collected On |
| Blood | | 01/06/16 1750 |

Resulted: 01/06/16 1812, Result status: In process

### CK [165491304]

| Ordering provider: | Sherri Renae Carter-Wyatt, MD 01/06/16 1652 | Resulting lab: | BHMC LAB |

Specimen Information

| Type | Source | Collected On |
| Blood | | 01/06/16 1750 |

Resulted: 01/06/16 1812, Result status: In process

### Troponin I [165491305]

| Ordering provider: | Sherri Renae Carter-Wyatt, MD 01/06/16 1652 | Resulting lab: | BHMC LAB |

Specimen Information

| Type | Source | Collected On |
| Blood | | 01/06/16 1750 |

Resulted: 01/06/16 1812, Result status: In process

### Glucose, random [165491306]

 **Baptist Health**

BHMC NORTH LITTLE ROCK
3333 Springhill Drive
North Little Rock AR 72117-2922
Abstract Report

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C: 1/6/2016

## Lab - All Results (continued)

Resulted: 01/06/16 1812, Result status: In process

### Glucose, random [165491306] (continued)

Ordering provider:   Sherri Renae Carter-Wyatt, MD        Resulting lab:    BHMC LAB
                     01/06/16 1652

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
| Blood |  | 01/06/16 1750 |

Resulted: 01/06/16 1812, Result status: In process

### Magnesium [165491307]

Ordering provider:   Sherri Renae Carter-Wyatt, MD        Resulting lab:    BHMC LAB
                     01/06/16 1652

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
| Blood |  | 01/06/16 1750 |

Resulted: 01/06/16 1820, Result status: Preliminary result

### CBC and differential [165491300] (Abnormal)

Ordering provider:   Sherri Renae Carter-Wyatt, MD        Resulting lab:    BHMC LAB
                     01/06/16 1652

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
| Blood |  | 01/06/16 1750 |

Components

| | Value | Ref range | Flag | Comment | Lab |
|---|-------|-----------|------|---------|-----|
| WBC | 9.4 | 5.0 - 10.0 K/cmm | L | * | BHLAB |
| RBC | 4.40 | 4.60 - 5.50 M/cmm | L | * | BHLAB |
| Hemoglobin | 13.2 | 13.5 - 17.5 g/dl | L | * | BHLAB |
| Hematocrit | 40.2 | 40.5 - 52.5 % | L | * | BHLAB |
| MCV | 91 | 80 - 100 fl | | * | BHLAB |
| MCH | 30 | 27.0 - 31.0 uug | | * | BHLAB |
| MCHC | 33 | 32.0 - 36.0 g/dl | | * | BHLAB |
| Platelets | 206 | 150 - 400 K/cmm | | * | BHLAB |
| RDW | 15.2 | 11.5 - 14.5 % | H | * | BHLAB |
| Neutrophils % | PENDING | 50.0 - 70.0 % | | * | BHLAB |
| Lymphocytes % | PENDING | 20.0 - 35.0 % | | * | BHLAB |
| Monocytes % | PENDING | 2.0 - 8.0 % | | * | BHLAB |

Resulted: 01/06/16 1842, Result status: Final result

### Electrolyte panel [165491301]

Ordering provider:   Sherri Renae Carter-Wyatt, MD        Resulting lab:    BHMC LAB
                     01/06/16 1652

Specimen Information

| Type | Source | Collected On |
|------|--------|--------------|
| Blood |  | 01/06/16 1750 |

Components

| | Value | Ref range | Flag | Comment | Lab |
|---|-------|-----------|------|---------|-----|

 **Baptist Health**   BHMC NORTH LITTLE ROCK          PORTER,BILLY
                     3333 Springhill Drive            MRN: 02136122
                     North Little Rock AR 72117-2922  DOB: 2/27/1961, Sex: M
                     Abstract Report                  Adm: 1/6/2016, D/C: 1/6/2016

## Lab - All Results (continued)

Resulted: 01/06/16 1842, Result status: Final result

### Electrolyte panel [165491301] (continued)

|          | Value | Ref range         | Flag | Comment | Lab   |
|----------|-------|-------------------|------|---------|-------|
| Sodium   | 142   | 136 - 145 meq/L   | -    |         | BHLAB |
| Potassium| 3.5   | 3.5 - 5.1 meq/L   | -    |         | BHLAB |
| Chloride | 106   | 98 - 107 meq/L    | -    |         | BHLAB |
| CO2      | 26.0  | 22 - 29 meq/L     | <    |         | BHLAB |

Resulted: 01/06/16 1842, Result status: Final result

### BUN [165491302]

Ordering provider:  Sherri Renae Carter-Wyatt, MD          Resulting lab:   BHMC LAB
                    01/06/16 1652

**Specimen Information**

| Type  | Source | Collected On    |
|-------|--------|-----------------|
| Blood |        | 01/06/16 1750   |

**Components**

|     | Value | Ref range         | Flag | Comment | Lab   |
|-----|-------|-------------------|------|---------|-------|
| BUN | 19    | 8.4 - 25.7 mg/dl  |      | -       | BHLAB |

Resulted: 01/06/16 1842, Result status: Final result

### Creatinine, serum [165491303] (Abnormal)

Ordering provider:  Sherri Renae Carter-Wyatt, MD          Resulting lab:   BHMC LAB
                    01/06/16 1652

**Specimen Information**

| Type  | Source | Collected On    |
|-------|--------|-----------------|
| Blood |        | 01/06/16 1750   |

**Components**

|                      | Value | Ref range        | Flag | Comment | Lab   |
|----------------------|-------|------------------|------|---------|-------|
| Creatinine           | 1.43  | 0.72 - 1.28 mg/dl| H    | -       | BHLAB |
| GFR (Non-African Amer) | 52  | >60 ml/min/1.73m2| L    |         | BHLAB |
| Comment | Abnormal Results- Chronic Kidney Disease: <60 ml/min/1.73m2. Kidney Failure: <15ml/min/1.73m2. | | | | |
| GFR (African Amer)   | >60   | >60 ml/min/1.73m2|      |         | BHLAB |
| Comment | The National Kidney Foundation recommends reporting eGFR values above 60 ml/min as >60. An eGFR of >60 ml/min is considered normal or near normal kidney function. The estimated GFR is obtained using the modified MDRD Study equation. The MDRD Study equation has not been validated for use with the elderly (over 70 yrs of age), pregnant women, patients with serious comorbid conditions, or persons with extremes of body size, muscle mass or nutritional status. | | | | |

Resulted: 01/06/16 1842, Result status: Final result

### CK [165491304] (Abnormal)

Ordering provider:  Sherri Renae Carter-Wyatt, MD          Resulting lab:   BHMC LAB
                    01/06/16 1652

**Specimen Information**

| Type  | Source | Collected On    |
|-------|--------|-----------------|
| Blood |        | 01/06/16 1750   |

 **Baptist Health**  BHMC NORTH LITTLE ROCK          PORTER,BILLY
3333 Springhill Drive                   MRN: 02136122
North Little Rock AR 72117-2922         DOB: 2/27/1961, Sex: M
Abstract Report                         Adm: 1/6/2016, D/C: 1/6/2016

## Lab - All Results (continued)

Resulted: 01/06/16 1842, Result status: Final result

### CK [165491304] (Abnormal) (continued)

Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| Total CK | 329 | 30 - 200 IU/L | H | - | BHLAB |

Resulted: 01/06/16 1842, Result status: Final result

### Glucose, random [165491306]

Ordering provider:  Sherri Renae Carter-Wyatt, MD          Resulting lab:  BHMC LAB
01/06/16 1652

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Blood | | 01/06/16 1750 |

Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| Glucose | 94 | 70 - 105 mg/dl | | . | BHLAB |

Resulted: 01/06/16 1842, Result status: Final result

### Magnesium [165491307]

Ordering provider:  Sherri Renae Carter-Wyatt, MD          Resulting lab:  BHMC LAB
01/06/16 1652

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Blood | | 01/06/16 1750 |

Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| Magnesium | 1.80 | 1.3 - 2.1 meq/L | | - | BHLAB |

Resulted: 01/06/16 1844, Result status: Final result

### Troponin I [165491305]

Ordering provider:  Sherri Renae Carter-Wyatt, MD          Resulting lab:  BHMC LAB
01/06/16 1652

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Blood | | 01/06/16 1750 |

Components

| | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| Troponin I | 0.019 | 0.0 - 0.028 ng/ml | | . | BHLAB |

Resulted: 01/06/16 1846, Result status: Final result

### CBC and differential [165491300] (Abnormal)

Ordering provider:  Sherri Renae Carter-Wyatt, MD          Resulting lab:  BHMC LAB
01/06/16 1652

Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Blood | | 01/06/16 1750 |

Components

 **Baptist Health**

BHMC NORTH LITTLE ROCK
3333 Springhill Drive
North Little Rock AR 72117-2922
Abstract Report

PORTER,BILLY
MRN: 02136122
DOB: 2/27/1961, Sex: M
Adm: 1/6/2016, D/C: 1/6/2016

## Lab - All Results (continued)

Resulted: 01/06/16 1846, Result status: Final
result

### CBC and differential [165491300] (Abnormal) (continued)

|  | Value | Ref range | Flag | Comment | Lab |
|---|---|---|---|---|---|
| WBC | 3.4 | 5.0 - 10.0 K/cmm | L | - | BHLAB |
| RBC | 4.40 | 4.80 - 5.80 M/cmm | L | - | BHLAB |
| Hemoglobin | 13.2 | 13.5 - 17.5 g/dl | L | - | BHLAB |
| Hematocrit | 40.2 | 40.5 - 52.5 % | L | - | BHLAB |
| MCV | 91 | 80 - 100 fl |  | - | BHLAB |
| MCH | 30 | 27.0 - 31.0 uug |  | - | BHLAB |
| MCHC | 33 | 32.0 - 36.0 g/dl |  | - | BHLAB |
| Platelets | 206 | 150 - 400 K/cmm |  | - | BHLAB |
| RDW | 15.2 | 11.5 - 14.5 % | H | - | BHLAB |
| Neutrophils % | 31 | 50.0 - 70.0 % | L | - | BHLAB |
| Bands % | 7 | 0 - 5 % | H | - | BHLAB |
| Lymphocytes % | 47 | 20.0 - 35.0 % | H | - | BHLAB |
| Monocytes % | 9 | 2.0 - 8.0 % | H | - | BHLAB |
| Eosinophils % | 6 | 2.0 - 5.0 % | H | - | BHLAB |
| Anisocytosis | Slight |  |  | - | BHLAB |
| Microcytosis | Slight |  |  | - | BHLAB |
| Platelet Estimate | Adequate count. |  |  | - | BHLAB |
| Differential Type | Manual differential performed. |  |  | - | BHLAB |

### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 11 - BHLAB | BHMC LAB | Unknown | Unknown | 10/20/10 1408 - Present |
| 13 - Unknown | BHMC IMAGECAST | Unknown | Unknown | 10/29/10 1707 - Present |
| 14 - Unknown | BHMC MUSE | Unknown | Unknown | 10/29/10 1708 - Present |

### Patient Care Timeline
No data selected in time range

### Patient Care Timeline
No data selected in time range

## END OF REPORT

**From:** Raiber, Andrew J. (NCO-16)
**To:** Porter, Billy J.
**Cc:** Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Demian, Lou D. (VHACLE)
**Subject:** RE: Instructions
**Date:** Monday, January 11, 2016 10:56:06 AM
**Attachments:** image001.png
image003.png
image004.jpg

Mr. Porter,

As previously instructed, until you provide updated medical documentation that clears you for duty you are not to return to work. Once this medical documentation is provided we can then re-visit your work status. I look forward to receiving this medical documentation from you in the near future.

Thank you.


AJ Raiber
Chief, NCO16 Division II
715 S Pear Orchard Rd.
Ridgeland, MS 39157
☎ (601) 206-6945
📠 (601) 206-7062





 **"Delivering Client Centered Acquisition Solutions"**

"INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals."
As our client, please take a few moments and let us know how we did by completing the attached **SURVEY**.

**From:** Porter, Billy J.
**Sent:** Sunday, January 10, 2016 10:01 PM
**To:** Raiber, Andrew J. (NCO-16); Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Demian, Lou D. (VHACLE)
**Cc:** HAYS, RANDY; Rojo, Roberto (VHACO); McDonald, Bob; Mark.Gonzales@Mail.House.Gov
**Subject:** RE: Instructions
**Importance:** High

All,

1. The agency stated that based on my medical restrictions you were sending me home and not allowing me to return to work until I am cleared medically. Nowhere in the doctor's note did it state that I was not allowed to return to work. The doctor discharged me and instructed me to take only 1 pain pill every 4 to 6 hours for discomfort. I was only instructed not to work if taking narcotics, not regular pain pills. I followed the doctor's orders and when I returned to work I took only non-narcotic pain medication as she instructed. The ER doctor also instructed me to have my blood pressure rechecked and to follow up with my regular doctor in Texas to make sure I did not reinjure my shoulder during the fall. If you are going to force me to take leave against my will then I am requesting administrative leave so that I am not forced to use my own personal leave. According to policy this can be done. See attached

2. When I provided the agency with the medical documentation from my orthopedic physician, my physician stated I may work from home. He also stated that I was instructed not to lift, reach or do anything with my left shoulder as to prevent further injury or re-injury of the shoulder. He also instructed me not to walk upstairs (due to balance), and not to drive. I was not instructed by my physician not to return to work. His instructions were that I should work from home. Since the agency will not authorize me to work from home and since I cannot afford to continue to use up my leave I had no alternative but to return to my place of duty to continue to work. I was willing to return to work in Arkansas even though that meant that I had to post-pone my physical therapy and my other medical and counseling appointments. See attached

3. Since the agency won't approve my telework and does not want me to work in the office. Please tell me what logical and intelligent solution that the agency can come up with to resolve this issue. I would truly understand why you would not allow an employee to work from home if that employee is consistently late, unreliable and is not able to perform their job. However, that is not the case with me. I regularly come to work early and stay late and my work ethic is beyond reproach.

4. I am available to work from home on January 11, 2016, request approval or disapproval.

*v/r*

*"TREAT EACH AS MEMBERS, TOGETHER EVERYONE ACCOMPLISHED MORE"*

**Billy J. Porter, MLS**
*Network Contracting Office 16*
*Chief, Construction Team B, Division II*
*VA Little Rock Veterans Health Care System*
*2200 Fort Roots Drive*
*BLDG. 41 Room 230*
*North Little Rock, AR 72114-1709*

*Email: billy.porter@va.gov*
*Phone: (501)-257-1045*
*Blackberry: (501)-772-9279*

*Fax: (501)-228-8612*

**"Delivering Client Centered Acquisition Solutions"**

INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals." As our client, please take a few moments and let us know how we did by completing the attached **SURVEY**

---

**From:** Raiber, Andrew J. (NCO-16)
**Sent:** Friday, January 08, 2016 3:37 PM
**To:** Porter, Billy J.
**Cc:** Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Demian, Lou D. (VHACLE); HAYS, RANDY; Rojo, Roberto (VHACO)
**Subject:** RE: Instructions

Mr. Porter,

In concern for your safety, I have given you the instructions as to what steps you need to take prior to returning to work. Until that documentation is provided, the instructions I gave you still stand. Thank you.

AJ Raiber
Chief, NCO16 Division II
715 S Pear Orchard Rd.
Ridgeland, MS 39157
☎ (601) 206-6945
🖶 (601) 206-7062

**"Delivering Client Centered Acquisition Solutions"**

"INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals."
As our client, please take a few moments and let us know how we did by completing the attached **SURVEY**.

---

**From:** Porter, Billy J.
**Sent:** Friday, January 08, 2016 9:15 AM
**To:** Raiber, Andrew J. (NCO-16)
**Cc:** Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Demian, Lou D. (VHACLE); HAYS, RANDY; McDonald, Bob; Mark.Gonzales@Mail.House.Gov; Rojo, Roberto (VHACO)
**Subject:** RE: Instructions

Mr. Raiber & Mr. Ma,

I am not to take my medications, while a work from the last order and as far as yesterday, I did not take any of my medications all day while I was at work.

My orthopedic doctor stated that I could work from home, so what is the problem with that order? See number 3 in the attached.

*v/r*

*"TREAT EACH AS MEMBERS, TOGETHER EVERYONE ACCOMPLISHED MORE"*

**Billy J. Porter, MLS**
*Network Contracting Office 16*
*Chief, Construction Team B, Division II*
*VA Little Rock Veterans Health Care System*
*2200 Fort Roots Drive*
*BLDG. 41 Room 230*
*North Little Rock, AR 72114-1709*

*Email: billy.porter@va.gov*
*Phone: (501)-257-1045*
*Blackberry: (501)-772-9279*
*Fax: (501)-228-8612*

 **"Delivering Client Centered Acquisition Solutions"**

INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals." As our client, please take a few moments and let us know how we did by completing the attached **SURVEY**

**From:** Raiber, Andrew J. (NCO-16)
**Sent:** Friday, January 08, 2016 8:36 AM
**To:** Porter, Billy J.
**Cc:** Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Demian, Lou D. (VHACLE); HAYS, RANDY
**Subject:** RE: Instructions

Mr. Porter,

To clarify your point below, it was my decision to send you home based on your medical restrictions. I told you that I had been working with Calvin throughout the day on identifying options for you when I read your latest medical restrictions. After reading those restrictions, I conferred with Human Resources on the proper procedure and the I made the decision to send you home for your own safety.

I have approved your leave from January 8, 2016 to January 19, 2016 as annual leave as requested in VISTA. Please note that your request in VISTA reflects 48 hours, however, when I review this time period it appears you would need a leave request that covers 56 hours. I am tentatively approving your request for 48 hours, but you will need to submit a request to cover the other 8 hours. If additional leave is necessary after the 19th, please submit additional request(s) as appropriate.

Below in red is the agency response to your questions.

Questions:

(1)    What is my current status?  Would this be administrative leave since I'm been directed?    This is dependent on the type of leave you request.  You can choose between AL, SL, LWOP and FMLA if applicable.   Please enter you leave request in Vista and it will be reviewed and approved as appropriate.

(2)    What are the effective date(s) of this status?  Until you provide current medical documentation to support that you are cleared to return to duty.

(3)    What is the duration of this status?  Until you provide current medical documentation to support that you are cleared to return to duty.

(4)    What documentation is required to return to work?  Medical documentation that shows you are currently released back to full duty. The most recent medical we have states you should not work while taking narcotic medications.  We need medical documentation that addresses this issue and states you are released back to full duty.

(5) What about Telework?  You are not authorized to work until you provide medical documentation to support that you are cleared to return to duty.

Place in writing the effective date of release from work and duration.

What is my pay-status during this time?  This depends on the type of leave you request in Vista, as stated above you can choose between AL, SL, LWOP and FMLA if applicable.

Explain the actions that you are taking to seek clarification surrounding the current circumstances

I am requesting to revisit my telework request. See attached  This request is being reviewed as part of your Reasonable Accommodation request and once a determination is made you will be provided with a VA0857f that outlines the accommodations being offered for your review and approval/denial.

Should you have any questions please feel free to contact me or Mr. Zimcosky.

AJ Raiber
Chief, NCO16 Division II
715 S Pear Orchard Rd.
Ridgeland, MS 39157
☎ (601) 206-6945
   (601) 206-7062

**"Delivering Client Centered Acquisition Solutions"**

"INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals."
As our client, please take a few moments and let us know how we did by completing the attached
**SURVEY**.

**From:** Porter, Billy J.
**Sent:** Thursday, January 07, 2016 10:04 PM
**To:** Raiber, Andrew J. (NCO-16)
**Cc:** Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Kalivoda, Danielle; Demian, Lou D. (VHACLE); HAYS, RANDY; Mark.Gonzales@Mail.House.Gov; McDonald, Bob
**Subject:** RE: Instructions
**Importance:** High

Mr. Raiber,

Per our conversation and your e-mail instructions.

Instructions:

1.  Received a call from Mr. Raiber at about 03:10 pm to inform me that Calvin Ma instructed him to informed me that I am not allowed to work until I am cleared by my doctor and then ordered me to leave the office.
2.  Instructed me get an employee to help me down the stairs.
3.  Instructed to be cleared by a medical professional to return to work,
4.  Not authorized to come back to work.
5.  Directed me to use leave to cover this period of absence.
6.  Need to provide medical documentation showing that you have been medically released or cleared to return to work prior to returning to work.
7.  Failure to follow these instructions may result in corrective action.

8. Instructed me to call him when you got home.

Actions:

1. My driver arrived at 03:35 pm, so I had my driver to carry my backpack and assist me down the stairs
2. Contacted AJ at 04:15 pm as instructed.
3. Submitted leave in CLEVista at 07:20 pm for the following dates 1/8/2016 – 1/19/2016
4. Book flight to San Antonio for 1/8/2016
5. Left message with my clinic to setup an appointment.
6. Contacted and filed accident with VA North Little Rock Employee Health, informed me to contact Valerie Palmer or Brenda Reed in Jackson, MS.
7. Left a message at 01:30 pm with Valerie Palmer to contact me.

Questions:

(1) What is my current status?  Would this be administrative leave since I'm been directed?
(2) What are the effective date(s) of this status?
(3) What is the duration of this status?
(4) What documentation is required to return to work?
(5) What about Telework?

Place in writing the effective date of release from work and duration.

What is my pay-status during this time?

Explain the actions that you are taking to seek clarification surrounding the current circumstances

I am requesting to revisit my telework request. See attached

*v/r*

*"TREAT EACH AS MEMBERS, TOGETHER EVERYONE ACCOMPLISHED MORE"*

**Billy J. Porter, MLS**
*Network Contracting Office 16*
*Chief, Construction Team B, Division II*
*VA Little Rock Veterans Health Care System*
*2200 Fort Roots Drive*
*BLDG. 41 Room 230*
*North Little Rock, AR 72114-1709*

*Email: billy.porter@va.gov*
*Phone: (501)-257-1045*
*Blackberry: (501)-772-9279*

*Fax: (501)-228-8612*

INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals." As our client, please take a few moments and let us know how we did by completing the attached **SURVEY**

**From:** Raiber, Andrew J. (NCO-16)
**Sent:** Thursday, January 07, 2016 3:24 PM
**To:** Porter, Billy J.
**Cc:** Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Kalivoda, Danielle; Demian, Lou D. (VHACLE)
**Subject:** Instructions

Mr. Porter,

To follow up on the call we just had. Based on the medical documentation you provided to me this morning, I am instructing you to get assistance from one of the people there in the building to go down the stairs and to go home. Until you have been cleared by a medical professional to return to work, you are not authorized to come back to work. You are authorized to use leave to cover this period of absence and I will approve that leave. You need to provide me with medical documentation showing that you have been medically released or cleared to return to work prior to returning to work. Failure to follow these instructions may result in corrective action.

I encourage you to contact the VSC Benefits group at VSCBenefits@va.gov to seek their guidance on your fall yesterday and the OWCP process, and on the possibility of the leave transfer program. I am also asking that you contact me when you get home today to let me know you made it safely.

If you have questions, please contact me or Ron Zimcosky. Ron can be reached at 216-447-8013. My Blackberry number is 601-398-8730.

I am

AJ Raiber
Chief, NCO16 Division II
715 S Pear Orchard Rd.
Ridgeland, MS 39157
☎ (601) 206-6945
   (601) 206-7062



## "Delivering Client Centered Acquisition Solutions"

"INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals."

As our client, please take a few moments and let us know how we did by completing the attached **SURVEY**.

**julius_porter@hotmail.com**

| | |
|---|---|
| **From:** | Raiber, Andrew J. (NCO-16) |
| **Sent:** | Friday, January 8, 2016 8:36 AM |
| **To:** | Porter, Billy J. |
| **Cc:** | Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Demian, Lou D. (VHACLE); HAYS, RANDY |
| **Subject:** | RE: Instructions |

Mr. Porter,

To clarify your point below, it was my decision to send you home based on your medical restrictions. I told you that I had been working with Calvin throughout the day on identifying options for you when I read your latest medical restrictions. After reading those restrictions, I conferred with Human Resources on the proper procedure and the I made the decision to send you home for your own safety.

I have approved your leave from January 8, 2016 to January 19, 2016 as annual leave as requested in VISTA. Please note that your request in VISTA reflects 48 hours, however, when I review this time period it appears you would need a leave request that covers 56 hours. I am tentatively approving your request for 48 hours, but you will need to submit a request to cover the other 8 hours. If additional leave is necessary after the 19th, please submit additional request(s) as appropriate.

Below in red is the agency response to your questions.

Questions:

(1) What is my current status? Would this be administrative leave since I'm been directed? This is dependent on the type of leave you request. You can choose between AL, SL, LWOP and FMLA if applicable. Please enter you leave request in Vista and it will be reviewed and approved as appropriate.

(2) What are the effective date(s) of this status? Until you provide current medical documentation to support that you are cleared to return to duty.

(3) What is the duration of this status? Until you provide current medical documentation to support that you are cleared to return to duty.

(4) What documentation is required to return to work? Medical documentation that shows you are currently released back to full duty. The most recent medical we have states you should not work while taking narcotic medications. We need medical documentation that addresses this issue and states you are released back to full duty.

(5) What about Telework? You are not authorized to work until you provide medical documentation to support that you are cleared to return to duty.

Place in writing the effective date of release from work and duration.

What is my pay-status during this time? This depends on the type of leave you request in Vista, as stated above you can choose between AL, SL, LWOP and FMLA if applicable.

Explain the actions that you are taking to seek clarification surrounding the current circumstances

I am requesting to revisit my telework request. See attached  This request is being reviewed as part of your Reasonable Accommodation request and once a determination is made you will be provided with a VA0857f that outlines the accommodations being offered for your review and approval/denial.

Should you have any questions please feel free to contact me or Mr. Zimcosky.


AJ Raiber
Chief, NCO16 Division II
715 S Pear Orchard Rd.
Ridgeland, MS 39157
☎ (601) 206-6945
🖷 (601) 206-7062



 **"Delivering Client Centered Acquisition Solutions"**
SERVICE AREA OFFICE · CENTRAL

"INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals."
As our client, please take a few moments and let us know how we did by completing the attached <u>SURVEY</u>.


**From:** Porter, Billy J.
**Sent:** Thursday, January 07, 2016 10:04 PM
**To:** Raiber, Andrew J. (NCO-16)
**Cc:** Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Kalivoda, Danielle; Demian, Lou D. (VHACLE); HAYS, RANDY; Mark.Gonzales@Mail.House.Gov; McDonald, Bob
**Subject:** RE: Instructions
**Importance:** High

Mr. Raiber,

Per our conversation and your e-mail instructions.

Instructions:

1. Received a call from **Mr. Raiber** at about 03:10 pm to inform me that Calvin Ma instructed him to informed me that I am not allowed to work until I am cleared by my doctor and then ordered me to leave the office.
2. Instructed me get an employee to help me down the stairs.
3. Instructed to be cleared by a medical professional to return to work,
4. Not authorized to come back to work.
5. Directed me to use leave to cover this period of absence.
6. Need to provide medical documentation showing that you have been medically released or cleared to return to work prior to returning to work.
7. Failure to follow these instructions may result in corrective action.

2

8. Instructed me to call him when you got home.

Actions:

1. My driver arrived at 03:35 pm, so I had my driver to carry my backpack and assist me down the stairs
2. Contacted AJ at 04:15 pm as instructed.
3. Submitted leave in CLEVista at 07:20 pm for the following dates 1/8/2016 – 1/19/2016
4. Book flight to San Antonio for 1/8/2016
5. Left message with my clinic to setup an appointment.
6. Contacted and filed accident with VA North Little Rock Employee Health, informed me to contact Valerie Palmer or Brenda Reed in Jackson, MS.
7. Left a message at 01:30 pm with Valerie Palmer to contact me.

Questions:

(1) What is my current status?  Would this be administrative leave since I'm been directed?
(2) What are the effective date(s) of this status?
(3) What is the duration of this status?
(4) What documentation is required to return to work?
(5) What about Telework?

Place in writing the effective date of release from work and duration.

What is my pay-status during this time?

Explain the actions that you are taking to seek clarification surrounding the current circumstances

I am requesting to revisit my telework request. See attached

*v/r*

*"TREAT EACH AS MEMBERS, TOGETHER EVERYONE ACCOMPLISHED MORE"*

**Billy J. Porter, MLS**
*Network Contracting Office 16*
*Chief, Construction Team B, Division II*
*VA Little Rock Veterans Health Care System*
*2200 Fort Roots Drive*
*BLDG. 41 Room 230*
*North Little Rock, AR 72114-1709*

*Email: billy.porter@va.gov*
*Phone: (501)-257-1045*
*Blackberry: (501)-772-9279*
*Fax: (501)-228-8612*

 **SACCENTRAL** "Delivering Client Centered Acquisition Solutions"
SERVICE AREA OFFICE · CENTRAL

INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals."  As our client, please take a few moments and let us know how we did by completing the attached **SURVEY**

**From:** Raiber, Andrew J. (NCO-16)
**Sent:** Thursday, January 07, 2016 3:24 PM
**To:** Porter, Billy J.
**Cc:** Villalpando, Aaron (NCO 16); Ma, Calvin; Zimcosky, Ronald V. (VHACLE); Kalivoda, Danielle; Demian, Lou D. (VHACLE)
**Subject:** Instructions

Mr. Porter,

To follow up on the call we just had. Based on the medical documentation you provided to me this morning, I am instructing you to get assistance from one of the people there in the building to go down the stairs and to go home. Until you have been cleared by a medical professional to return to work, you are not authorized to come back to work. You are authorized to use leave to cover this period of absence and I will approve that leave. You need to provide me with medical documentation showing that you have been medically released or cleared to return to work prior to returning to work. Failure to follow these instructions may result in corrective action.

I encourage you to contact the VSC Benefits group at VSCBenefits@va.gov to seek their guidance on your fall yesterday and the OWCP process, and on the possibility of the leave transfer program. I am also asking that you contact me when you get home today to let me know you made it safely.

If you have questions, please contact me or Ron Zimcosky. Ron can be reached at 216-447-8013. My Blackberry number is 601-398-8730.

I am

AJ Raiber
Chief, NCO16 Division II
715 S Pear Orchard Rd.
Ridgeland, MS 39157
☎ (601) 206-6945
📠 (601) 206-7062



 **"Delivering Client Centered Acquisition Solutions"**

"INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals."
As our client, please take a few moments and let us know how we did by completing the attached <u>SURVEY</u>.

 Document 8

| | |
|---|---|
| **From:** | Demian, Lou D. (VHACLE) |
| **Sent:** | Wednesday, January 27, 2016 12:26 PM |
| **To:** | Somerville, April L. (VHACLE) |
| **Cc:** | Zimcosky, Ronald V. (VHACLE) |
| **Subject:** | RE: Porter |
| **Attachments:** | Porter VA0857a request.pdf; VA0857f determination Porter Billy (1).pdf; RE: Request for reasonable accommodation (Porter) (1.40 M3); Porter VA0857a request.pdf; Reasonable Accomodation (1.27 MB); RE: Reasonable Accomodation (144 KB); Porter VA0857a new request.odf |

Good Afternoon April,

Please see attached RA's requested, determinations, along with his rejections for accommodations offered:

1. RA requested in February 9, 2015
2. RA requested in September 25, 2015
3. RA requested November 19, 2015

Please contact me should you need further information,

Lou Demian
VSC


**From:** Zimcosky, Ronald V. (VHACLE)
**Sent:** Wednesday, January 27, 2016 8:20 AM
**To:** Demian, Lou D. (VHACLE)
**Cc:** Zimcosky, Ronald V. (VHACLE); Somerville, April L. (VHACLE)
**Subject:** FW: Porter

April,

I have attached the email from 1-14-16 that shows the last RA determination form that was not accepted by Mr. Porter. I have also included Lou Demian on this email as he would have the info for the other RA requests that Mr. Porter submitted along with the determination forms that were provided.

Respectfully,

Ronald Zimcosky, Lead HR Specialist (ER/LR)| VHA Service Center (VSC)
Employee Labor Relations
6100 Oak Tree Blvd., Suite 500 | Independence, OH 44131
P 216-447-8013 or 216-447-8010 ext. 3458 | F 216-447-8020 |
Ronald.Zimcosky@va.gov


http://vaww.va.gov/VHASERVICECENTER/Index.asp

The VSC values your opinion. Please use the following link to provide feedback on our service:
http://vaww.va.gov/VHASERVICECENTER/VSC_Customer_Service_Feedback.asp

1

Document 8     162240991

"INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals."
As our customer, please take a few moments and let us know how we did by completing the attached SURVEY:
http://survey.htm.va.gov/Perseus/se/7FDA9EA777C55E9D

This e-mail and any attachments are intended only for the use of the addressee(s) named herein and may contain
privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified
that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you
have received this e-mail in error, please notify me via return e-mail and via telephone and permanently delete the
original and any copy of any e-mail and any printout thereof.

**From:** Somerville, April L. (VHACLE)
**Sent:** Wednesday, January 27, 2016 8:16 AM
**To:** Zimcosky, Ronald V. (VHACLE)
**Subject:** Porter

Morning Ron,

I am working on Billy Porter OWCP challenge letter and I know that he has requested RA numerous times, can you
please provide me with the past requests and the dates so I can present it to DOL as part of his challenge?

Thank you for your time,

*April L. Somerville*

Human Resources Specialist (Benefits)
VHA Service Center (VSC)
6100 Oak Tree Blvd, Suite 500
Independence, OH 44131
216-447-8010 ext 3690
VSC Website: http://vaww.va.gov/VHASERVICECENTER/index.asp

 

The VSC values your opinion! Please use the following link to provide feedback on our service: **HR CUSTOMER
FEEDBACK**

"INTEGRITY, COMMITMENT, ADVOCACY, RESPECT, AND EXCELLENCE – these are our goals." As our
customer, please take a few moments and let us know how we did by completing the attached **survey.**

This e-mail and any attachments are intended only for the use of the addressee(s) named herein and may contain privileged and/or confidential
information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail,
and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail and via telephone and
permanently delete the original and any copy of any e-mail and any printout thereof.

P 30/30          << 0708277040 >>          CLE-RSHR19MFP          2016-01-28 06:36

Case No: 162240991          Page No: 70          Rec'd Date: 01/28/2016

U.S. DEPARTMENT OF LABOR
OFFICE OF WORKERS' COMP PROGRAMS
PO BOX 8300 DISTRICT 16 DAL
LONDON, KY 40742-8300
Phone: (214) 749-2320

March 9, 2016

Date of Injury: 01/06/2016
Employee: BILLY J. PORTER

BILLY J PORTER
113 BROOKBEND
CIBOLO, TX 78108

Dear Mr. PORTER:

Your claim for compensation benefits has been disallowed for the reason stated in the enclosed copy of the formal decision. This was based on all evidence of record and on the assumption that all available evidence has been submitted. If you disagree with the decision, you may follow any one of the courses of action outlined on the attached appeal rights.

Further medical treatment at OWCP expense is not authorized and prior authorization, if any, is hereby terminated.

Your employing agency will charge the previously paid Continuation of Pay (COP) to your sick and/or annual leave balance. If you do not have a leave balance, the money already paid as COP will be declared an overpayment.

Sincerely,

K. JOINER
Claims Examiner

Enclosures: Formal decision with appeal rights

DEPARTMENT OF VETERANS AFFAIRS
CHIEF INFORMATION OFFICER
AUSTIN HR CENTER (10A2A6A)
1615 WOODWARD STREET
AUSTIN, TX 00007

*If you have a disability (a substantially limiting physical or mental impairment), please contact our office/claims examiner for information about the kinds of help available, such as communication assistance (alternate formats or sign language interpretation), accommodations and modifications.*

## FEDERAL EMPLOYEES' COMPENSATION ACT APPEAL RIGHTS

**If you disagree with the attached decision, you have the right to request an appeal. If you wish to request an appeal, you should review these appeal rights carefully and decide which appeal to request. There are 3 different types of appeal as outlined below. YOU MAY ONLY REQUEST ONE TYPE OF APPEAL AT THIS TIME.**

**Place an "X" on the attached form indicating which appeal you are requesting. Complete the information requested at the bottom of the form. Place the form on top of any material you are submitting. Then mail the form with attachments to the address listed for the type of appeal that you select. Always write the type of appeal you are requesting on the outside of the envelope ("HEARING REQUEST", "RECONSIDERATION REQUEST", or "ECAB REVIEW").**

<u>NOTE</u> - **If you have a substantially limiting physical or mental impairment, Federal disability nondiscrimination law gives you the right to receive help from DFEC in the form of communication assistance, accommodation and modification to aid you in the FECA claims process. For example, we will provide you with copies of documents in alternate formats, communication services such as sign language interpretation, or other kinds of adjustments or changes to account for the limitations of your disability. Please contact the appropriate office below to ask about this assistance.**

**1. HEARING:** If your injury occurred on or after July 4, 1966, and you have not requested reconsideration, as described below, you may request a Hearing. To protect your right to a hearing, any request for a hearing must be made before any request for reconsideration by the District Office (5 U.S.C. 8124(b)(1)). **Any hearing request must also be made in writing, within 30 calendar days after the date of this decision, as determined by the postmark of your letter.** (20 C.F.R. 10.616). There are two forms of hearings, both conducted by a hearing representative. You may request either one or the other, but not both.

a. **Oral Hearing.** An informal oral hearing is conducted at a location near your home or by teleconference/videoconference. You may present oral testimony and written evidence in support of your claim. Any person authorized by you in writing may represent you at an oral hearing. At the discretion of the hearing representative, an oral hearing may be conducted by teleconference or videoconference.

b. **Review of the Written Record.** You may submit additional written evidence, which must be sent with your request for review. You will not be asked to attend or give oral testimony.

**2. RECONSIDERATION:** If you have additional evidence or legal argument that you believe will establish your claim, you may request, in writing, that OWCP reconsider this decision. **The request must be signed, dated and received within one calendar year of the date of the decision.** It must clearly state the grounds upon which reconsideration is being requested, and be accompanied by relevant evidence not previously submitted, such as medical reports, sworn statements, or a legal argument not previously made, which apply directly to the issue addressed by this decision. A person other than those who made this decision will reconsider your case. (20 C.F.R. 10.605-610)

**3. REVIEW BY THE EMPLOYEES' COMPENSATION APPEALS BOARD (ECAB):** If you believe that all available evidence that would establish your claim has already been submitted, you have the right to request review by the ECAB (20 C.F.R. 10.625). The ECAB will review only the evidence received prior to the date of this decision (20 C.F.R. Part 501). **Request for review by the ECAB must be made within 180 days from the date of this decision.** More information on the new Rules is available at www.dol.gov/ecab.

Case Number: 162240991
Employee: BILLY J. PORTER
Date: March 9, 2016
**APPEAL REQUEST FORM**

If you decide to appeal this decision, read these instructions carefully. You must specify which procedure you request by checking one of the options listed below. Place this form on top of any materials you submit. **Be sure to mail this form, along with any additional materials, to the appropriate address. YOU MAY ONLY REQUEST ONE TYPE OF APPEAL AT THIS TIME.**

\_\_\_\_\_ **ORAL HEARING**

Depending on your geographical location, the issue involved in your case, the number of hearing requests in your area, and at the discretion of the hearing representative, we may expedite your appeal by providing you a telephone hearing or videoconference. **Please check here if you would prefer a telephone hearing.** \_\_\_\_\_

\_\_\_\_\_ **REVIEW OF THE WRITTEN RECORD**

For each of these options, you must submit this form within 30 calendar days of the date of the decision. You may also submit additional written evidence with your request. Do not mail this appeal request to the District Office. **You must mail your request to:**
**Branch of Hearings and Review**
**Office of Workers' Compensation Programs**
**P. O. Box 37117**
**Washington, DC 20013-7117**

\_\_\_\_\_ **RECONSIDERATION:**

Your request must be signed, dated and received by OWCP within 1 calendar year of the date of the decision. You must state the grounds upon which reconsideration is being requested. Your request must also include relevant new evidence or legal argument not previously made. **Mail your request to:**
**DOL DFEC Central Mailroom**
**P. O. Box 8300**
**London, KY 40742**

\_\_\_\_\_ **ECAB APPEAL:**

Submit this form within 180 calendar days of the date of the decision. No additional evidence after the date of OWCP's decision will be reviewed. To expedite the processing of your ECAB appeal, you may include a completed copy of the AB 1 form used by ECAB to docket appeals available on the Department of Labor Web Site at www.dol.gov/ecab. Do not mail this appeal request to the District Office. **You must mail your request to:**
**Employees' Compensation Appeals Board**
**200 Constitution Avenue NW, Room S-5220**
**Washington, DC 20210**

SIGNATURE_____ TODAY'S DATE_____
PRINTED NAME_____ DECISION DATE_____
ADDRESS_____ PHONE_____
CITY _____ STATE_____ ZIP_____

## NOTICE OF DECISION

DATE: March 9, 2016

CASE NUMBER:     162240991
CLAIMANT NAME:    BILLY J. PORTER

### ISSUE:

The issue is whether the evidence of record is sufficient to establish that you sustained a Traumatic Injury as compensable under the Federal Employees' Compensation Act (FECA).

### REQUIREMENTS OF ENTITLEMENT:

Under the FECA, a person who files a claim has the "burden of proof" to establish the 5 basic requirements. This means that the claimant has a responsibility to supply the evidence needed to show timely filing, civil employee status, fact of injury, performance of duty and causal relationship.

Specifically, in order for a claim to be accepted under the Federal Employees' Compensation Act (FECA), the claim must meet 5 basic elements. The claim must:
   (1) Be <u>Timely Filed</u>.
   (2) Be made by a Federal <u>Civil Employee</u>.
   (3) Establish <u>Fact of Injury</u>, which has both a factual and medical component. Factually, the injury, accident or employment factor alleged must have actually occurred. Medically, a medical condition must be diagnosed in connection with the injury or event.
   (4) Establish <u>Performance of Duty</u>. The injury and/or medical condition must have arisen during the course of employment and within the scope of compensable work factors.
   (5) Establish <u>Causal Relationship</u>, which means the medical evidence establishes that the diagnosed condition is causally related to the injury or event.

With traumatic injury claims, to determine whether the injury, in fact, occurred, emphasis is on time, place and circumstances. Evidence concerning these areas must be consistent to establish fact of injury. Further, the claimant must submit medical evidence that supports that he/she actual sustained an injury as claimed.

The Federal Employees' Compensation Act specifically excludes from coverage injuries stemming from three types of circumstances which are not considered to arise out of employment. The specific "statutory exclusions" are:

   1. Willful misconduct;

   2. Intoxication as a direct cause of the injury; and

   3. The employee's intention to cause injury to him/herself or to another.

### BACKGROUND:

On 01/06/2016, you filed a claim for Traumatic Injury indicating that you sustained an injury to your neck, back, legs, shoulders and a headache as a result of your employment as a Supervisory

prescribed this medication when you made an appointment with your primary care doctor in October 2015. You state that you were prescribed 10mg every four hours, along with your regular medications. You state that you began taking hydrocodone in October 2015, and that you doctors told you that you should be working from home while on this medication. You state that each time you have been prescribe this medication, you have provided the physician's orders to your doctors that state you should work from home. You state that your employer denied your requests despite knowledge of possible hazards. You go on to state that you were forced to return to an unsafe environment, and that you asked for accommodation before returning to work and were told that you would not be given any. You state that there were no alternate routes to your destination that did not require you to ambulate down the stairs. You state that your employer did not move your office until the first floor until after your fall. You go on to describe your pre-existing conditions of the back, shoulder, hips, knees, ankles and feet, and indicate that your work fall exacerbate these conditions. You state that the ER doctor suggested that you not take pain medication when you return to work, so you did not take any medication upon your return the following day. You state that the ER doctor did not know the condition of your shoulder before the fall and that she was unable to determine the extent of injury after the fall. You state that your orthopedic surgeon cannot see you while awaiting necessary paperwork from the worker's comp office.

On 02/22/2016, the Office verified with your employing agency that there is no elevator or escalator at your duty station, and that you had been offered a first floor office before the injury, which you declined. Your employing agency also indicates that while a first floor office was being prepared, you were advised to notify a supervisor if you required assistance ambulating the stairs.

On 03/07/2016, you seek medical treatment with a chiropractor, Dr. Daniel Beltran, who provides you with a CA-17. This CA-17 is not countersigned by a qualified physician, and is not accompanied by a comprehensive report of examination or treatment.

In review of the evidence submitted, the Office finds that you initiated a reasonable accommodation request in February 2015, and provided medical documentation from your family physician which indicates that you have disabilities that limit your ability to sit, stand or walk for long periods of time, and that you are unable to perform heavy lifting, pushing or pulling. The Office notes that your duty station is located in a different state than where you reside, approximately 564 miles away. Your employing agency offered alternative accommodation of an ergonomic assessment and workstation, which you declined. In September 2015, you again request full-time telework, indicating that you are unable to sit, stand or walk for extended period of time and that you need to work in a location that you can obtain medical care. To support your request, you provide medical documentation from a nurse practitioner, indicating that you may work from home for increased comfort due to limitations from your left shoulder range of motion and moderate low back pain. In October 2015 your agency offers alternative accommodation of an ergonomic assessment and sit/stand workstation and five days of telework per pay period (3 days on the first week, 2 days on the second week), however, your employer indicates that your alternate duty station must be within local commuting distance to your official duty station.   Had appealed that decision with no response from the employer date October 24, 2015.

In October 2015, you decline this offer of alternative accommodation, citing that you live and seek medical care in Texas and that you cannot obtain medical care while working in Arkansas. You state that your pain shot will be wearing off soon and you will begin taking pain medications, and that while driving to and from work under the influence will be a danger to others. You request that your employer provide you with transportation to and from work. The Office notes that you have not submitted any evidence that indicates you were prescribed narcotic medications between 09/16/2015 and 12/09/2015.

medication while at work on 01/07/2016, and indicate that your orthopedic doctor indicates you could work from home. In response, your employer indicates that you have been provided instructions and they will await your medical release.

You stop work on 01/08/2016.

On 01/10/2016, you write an email to your employer, indicating that you have followed the emergency physician's instructions regarding reducing your narcotic intake to one pain pill every four to six hours and not to take narcotic medication at work, and that you have also had your blood pressure rechecked. You state that you have followed up with a doctor in Texas to make sure that you did not reinjure your shoulder during the fall. You state that you are requesting administrative leave instead of personal leave. You go on to indicate that your orthopedic physician did not say you could not work, but indicated you had limitations and could work from home. You again indicate that you could not afford to use personal leave following surgery and because you were not authorized to telework, you returned to work and canceled all of your appointments. In response, your agency again instructs you to provide medical documentation that clears you for duty.

On 01/20/2016, a nurse practitioner in Texas, Ms. Fraser, completed a form for your employer [provided on 11/17/2015]. On this form, Ms. Fraser indicates that you underwent left shoulder surgery with recovery anticipated for four weeks from 01/20/2016, after the fall. Ms. Fraser indicates that you are limited to no reaching, driving, climbing or lift with the left upper arm for four weeks from 01/20/2016. Ms. Fraser indicate that you are unable to use your left and shoulder, and that your fall set back your recovery time. Ms. Fraser indicates that you are unable to drive to work, cannot lift, reach, walk up stairs (due to imbalance), or drive while taking narcotics. Ms. Fraser indicates that you may work from home.

On 01/22/2016, you seek medical treatment with a nurse practitioner, Mr. Mark Wilson. The Office notes that this medical report is not countersigned by a qualified physician, and as such, is of insufficient probative value to support your claim for injury.

On 01/29/2016, you seek medical treatment with a physician's assistant, Mr. Mike Hedgepath. The Office notes that this medical report is not countersigned by a qualified physician, and as such, is of insufficient probative value to support your claim for injury.

On 02/13/2016, you seek medical treatment with Dr. Dan Hoyumpa, who provides you with a work status form. This work note is not accompanied by a comprehensive report of examination and/or treatment, and alone is of insufficient probative value to support your claim for injury.

On 02/18/2016, you seek medical treatment with a chiropractor, Dr. Daniel Beltran, who provides you with a CA-17. This CA-17 is not countersigned by a qualified physician, and is not accompanied by a comprehensive report of examination or treatment.

On 02/19/2016, you provide a written response to the Office's Questionnaire for Completion. You indicate that prior to the injury, you had informed your employers that your orthopedic surgeon indicated that you should work from home due to your limited ability to reach and lift following surgery and due to your limited ability to drive and climb due to certain medication. You state that you requested was denied and that your employer did not make any accommodations for your transportation to and from work or move your office to the first floor. You state that you were forced to climb stairs and pay for transportation to and from work. You state that you were never offered assistance of any kind when you did return to work, and that no attempt was made to move your office to the first floor. You state that you were took hydrocodone before the injury, and that you were

you also have hypertension, but that you did not take your blood pressure medicines today. On examination, the physician notes that you are 5 foot 10, inches, 239 pounds, with a body mass index of 33.00. The physician indicates that you are standing and walking well, but that your speech is slightly slurred and you are obviously somewhat sleepy and lightheaded. The emergency department physician performs routine testing following a reported fall and provides an assessment of acute narcotic intoxication and lightheadedness, and recommends to you that you do not need to be taking that much medication, and do not need to be taking medication and working because you are obviously sleepy and a fall would be likely. The physician also recommends that you begin taking your blood pressure medication as directed and decrease your narcotic consumption so that you are taking no narcotics while working. The Office notes that based upon the history that you provide to the physician, you no less than 60 mg of hydrocodone in the time between your arrival to work on the date of injury, and the time when injury occurred. The standing record of prescription in file for hydrocodone is at a dosage of up to 40mg per day. The Office notes that the physician did not elect to perform a toxicology screening, most likely due to your own admission of opiate consumption and the clinical presentation of acute narcotic consumption.

You submit a Form CA-1, reporting injury as a result of the fall on 01/06/2016. The Office notes that you dated the CA-1 to indicate that it was submitted on 01/06/2016; however, this is the date of injury, and immediately following the fall you sought treatment at the emergency department and suffered from acute narcotic intoxication. It is unlikely that you completed this form on the date of injury. Your employing agency certifies the claim form on 01/13/2015, and it is received by the Office on 01/14/2016.

You draft a memorandum to your employing agency indicating that at about 3:30pm on 01/06/2016, you were prepared to leave the office at the end of your workday by taking a pull, turning off your laptop and placing it into your backpack along with your iPad and speaker, You state that you placed the backpack over your right shoulder, turned off the lights, left the office then closed and locked the door. You state that you proceeded out of the office areas, stopping for water at the fountain to take your pain pill. You state that you turned towards the stairs to proceed down with your arm sling on one shoulder and your backpack on the other shoulder. You state that you took a few steps and slipped, on what you believe to be a loose stair treat, falling backwards, hitting your back, hip, and elbow. You state that you dropped your back pack on the way down, and that people in the downstairs office came over to assist you and stayed until the ambulance arrived. The Office notes that this statement is dated 01/06/2016; however, it is unlikely that this memorandum was drafted on the date of injury, given that you immediately sought medical treatment at the emergency department and suffered from acute narcotic intoxication.

On 01/07/2016, your employing agency emailed you indicating that based upon the medical documents that you provided, you are instructed to get assistance from someone in the building to go up and down the stairs. Your agency also indicates that until you are cleared by a medical professional to return to work, you are not authorized to come back to work. Your agency authorizes you to use leave to cover this absence from work, and advises that you must provide medical documentation showing that you have been medically released or cleared to return to work prior to returning to work. Your agency indicates that failing to follow these instructions may result in corrective action. In response, your request clarification regarding these instructions, to which your employer explains that the medical documentation indicates that you should not work while taking narcotic medication, and that medical documentation is required that addresses this issue and indicate you are released back to full duty. Your agency indicates that you are authorized AL, SL, LWOP and FMLA, which you may request in VISTA. Your agency indicates that you are not authorized to work, to include telework, until cleared to return to full duty. Your agency indicates that you are being sent home for your own safety. In response, you indicate that you did not take any

Contract Specialist with the Department of the Veterans Affairs in North Little Rock, Arkansas. Specifically, you stated that the injury resulted from a fall at work.

When your claim was received, it appeared to be a minor injury resulting in minimal or no lost time from work. Based on these criteria, and because your employing agency did not initially controvert your entitlement to Continuation of Pay (COP) or challenge the merits of the case, payment of a limited amount of medical expenses was administratively approved. The merits of the claim, however, had not been formally considered.

Your claim was reopened for consideration because we received an indication that you have not returned to work in a full-time capacity.

When your claim was reopened for consideration, the following evidence has been received in your case:

- Memorandum regarding reasonable accommodation request determination, dated 06/12/2015;
- Written confirmation of request for accommodation, dated 09/25/2015;
- Email addressed to you by your supervisor, dated 10/22/2015;
- Memorandum rejecting alternative accommodation, dated 10/24/2015;
- Written confirmation of request for accommodation, dated 11/19/2015;
- Request for medical documentation, dated 12/29/2015;
- Personal statement, dated 01/06/2015;
- Summary of hospitalization from Baptist Health North Little Rock, dated 01/06/2016;
- Texas Workers' Compensation Work Status Report from Dr. Dan Hoyumpa, dated 01/22/2016;
- Medical report from a nurse practitioner, dated 01/22/2016;
- Choice of physician election form, dated 01/25/2016;
- Authorization to release medical records, dated 01/25/2016;
- Email addressed to you by your supervisor, dated 01/25/2016;
- Reasonable accommodation request determination from Mr. Ma, dated 01/26/2016;
- Employing agency's notification of challenge to the merits of the claim, dated 01/27/2016;
- Medical report from a physician's assistant, dated 01/29/2016;
- Prescription form from a physician's assistant;
- Texas Workers Compensation Work Status Form from Dr. Hoyumpa, dated 01/29/2016;
- Form CA-3, Report of Work Status, dated 02/02/2016;
- Three (3) copies of photographs taken of a stairwell, undated;
- Reasonable accommodation request determination from Mr. Ma, undated; and
- Reasonable accommodation request determination from Mr. Diaville, undated.

On 02/04/2016, this Office advised you of the deficiencies in your claim and provided you the opportunity to submit additional evidence. Specifically, you were advised that additional evidence is needed to establish the circumstances of the injury and that you were in the performance of duty when injury occurred. You were asked to provide a response to the Questionnaire for Completion in order to support the factual elements of your claim. In the Questionnaire, we advised you that the evidence indicates that you took a pain pill at work prior to falling down the stairs, and that you had knowledge that taking medication at work was an unsafe practice. We asked you to provide additional information about the medication that you took before the injury occurred, including the name of the medication, the reason why you were taking this medication, the name of the prescribing physician, and the amount and frequency of the dosage. You were asked to describe how long you have been taking this medication, whether you had ever been advised by a physician or pharmacist not to take

this medication at work, and whether you have ever been advised to limit your activities while taking this medication. You were advised that the evidence also indicates that prior to the injury, you have a history of dizziness and balance issues, and that you had knowledge that taking your medication at work is an unsafe practice. You were asked whether there were any alternative routes that did not require you to ambulate down the stairs while intoxicated. You were asked to provide the complete treatment records from your care at the emergency department of Baptist Health North Little Rock. Because you indicated that there were witnesses to the injury, you were asked to provide statements from any persons who witnessed your fall or had immediately knowledge of it. Because you have non-work related conditions of the back, shoulders, hips, knees, ankles and feet for which you have previously requested accommodation from your employer, to include a recent shoulder surgery on 12/09/2015, you were asked to provide relevant details and records of medical treatment for any pre-existing conditions of the neck back and left shoulder. You were also asked whether your surgeon restricted your physical activity when you returned to work on 01/04/2016 following the surgery on 12/09/2015.

You were also advised that the medical portion of your claim was insufficient because you submitted medical reports from a nurse practitioner and physician's assistant without the countersignature of a qualified physician. You were advised that because the evidence indicates that you were intoxicated when injury occurred, you should submit a medical narrative from your treating physician which specifically discusses the intoxicating substances that you consumed on 01/06/2016, your medication regimen in effect on 01/06/2016, a list of all prescribed medication and the reasons why they are prescribed, the amount and frequency and dosages, the known side-effects of all prescribed medications, and any measures taken to counteract these effect. You were also asked to submit medical evidence that included a qualified physician's valid diagnosis of any condition resulting from your injury and treatment records as well as a physician's opinion, supported by medical evidence as to how your injury resulted in any diagnosed condition. You were advised that because it is well documented that you have pre-existing, degenerative conditions for the body parts that you are claiming injury, the physician must discuss the status of these conditions before the injury and a discussion of the objective findings that demonstrate these conditions worsened due to the injury.

You were provided 30 days to submit the requested information.

In response to our development letter, we received the following evidence:

- Personal medical records and data covering the period of 02/02/2015 to 02/19/2016;
- Request for medical documentation form from Dr. Veuki Li, dated 04/15/2015
- MRI of left shoulder, dated 08/28/2015;
- Request for medical documentation form from a nurse practitioner, dated 10/01/2015;
- Internal employing agency email correspondence between you and other, dated 12/17/2015 to 01/06/2016;
- Surgery scheduling form from Dr. Simon, dated 12/09/2015;
- Request for medical documentation form from Dr. Patrick Simon, dated 12/28/2015;
- Treatment records from Baptist Health North Little Rock, dated 01/06/2016;
- Payment receipt, dated 01/06/2016;
- Internal employing agency email correspondence between you and others, dated 01/07/2016 to 01/11/2016;
- Email from you addressed to several other employees and copying a staff member of a congressional office, dated 01/10/2016;
- Request for medical documentation form from a nurse practitioner, dated 01/20/2016;

- Employing agency email correspondence, not including you and pertaining to Continuation of Pay and work stoppage, dated 02/03/2016;
- Internal employing agency memorandum regarding Continuation of Pay (COP), dated 02/10/2016;
- Texas Workers Compensation Work Status Report from Dr. Hoyumpa, dated 02/13/2016;
- MyHealtheVet Medication and Supplements Summary, dated 02/19/2016;
- Signed statement of certification, dated 02/19/2016;
- Personal statement, dated 02/19/2016;
- Summary and detailed list of military-service connected disabilities, undated;
- Witness statement from Mr. D. Miller, dated 02/22/2016;
- Witness statement from Mr. A. Raiber, dated 02/22/2016;
- Statement from the employing agency's health unit, dated 03/02/2016; and
- Form CA-17 from a chiropractor, dated 03/07/2016.

The period of due process in your case expired on 03/06/2016. The evidence of record has been established and the following discussion of evidence is made on the assumption that all available evidence has been submitted.

**DISCUSSION OF EVIDENCE:**

Based upon the summary of military-service connected disabilities provided, you have been awarded disability compensation from the Department of Veterans Affairs for: gout with degenerative arthritis of the left ankle, 10% from 07/01/2007; residual first and second degree burns of the right hand, 10% from 07/01/2007; left knee degenerative arthritis post tendon lesion excision, 10% from 07/01/2007; residual surgical scaring from 1st MIP join fusion of the right hand, 0% from 07/01/2007; lumbar spine spondylosis, 20% from 02/15/2012; right lower extremity radiculopathy, 20% from 02/15/2012; residual surgical scarring from extensor tendon repair of the right little finger, 0% from 07/01/2007; degenerative arthritis of the left hip, 10% from 07/01/2007; obstructive sleep apnea, 50% from 02/15/2012; degenerative osteoarthritis of the 1st metatarsophalangeal joint of the left foot, 10% from 02/15/2012; olecranon bursitis of the right forearm, 10% from 02/15/2012; olecranon bursitis of the left forearm, 0% from 02/15/2012; right foot great toe degenerative arthritis post fracture with surgical fusion of the 1st MIP joint, 10% from 02/15/2012; residuals of left shoulder AC separation, 10% from 07/01/2007; gastroesophageal reflux, 10% from 02/15/2012; residual flexion contraction following avulsion fraction, PIP join, and extensor tendon rupture of the right little finger, 0% from 07/01/2007; hypertension, 10% from 07/01/2007; residuals of nasal fractures, 0% from 07/01/2007; right elbow olecranon bursitis, 10% from 02/15/2012; left elbow olecranon bursitis, 20% from 02/05/2012; residual scarring in the central abdominal region, 0% from 07/01/2007; achalasia with dysphagia, 0% from 07/01/2007; right knee degenerative arthritis with chondromalacia post tendon lesion excision, 10% from 07/01/2007; and tinnitus, 10% from 07/01/2007. The Department of Veterans Affairs found the following disability not related to military service: right hip arthritis from pre-discharge exam; residuals left little finger fracture from pre-discharge exam; residual left index finger fracture from pre-discharge exam; headaches from pre-discharge exam; recurring left ankle cyst from pre-discharge exam; and lower abdominal pain from pre-discharge exam. Your combined rating for military service related disabilities is 100%.

On 02/05/2015, you requested reasonable accommodation of 40 hours of telework (to work from home) per week.

Your employer provided a Request for Medical Information form to your physician, indicating that you are requesting to telework 40 hours per week because of functional limitations caused by your

disabilities but does not indicate what duties you indicate that you are unable to perform or the benefits and privileges of your employment that you are unable to enjoy.

On 04/15/2015, your family physician in Arkansas, Dr. Yueki Li, completed the form for your employer, in which the physician indicates that you have a medical history of chronic joint pain in the lower back, left shoulder, knee and feet. Dr. Li indicates that these conditions limit your ability to sit, stand or walk for long periods of time, and that you are unable to perform heavy lifting, pushing or pulling. Dr. Li indicates that you are requesting accommodation due to the effect that these conditions are having on your ability to perform in your work environment. Dr. Li indicates that if you are able to work from home, then you will be able to still be productive but in an environment that is more comfortable and which would cause less stress on your joints. The Office notes that Dr. Li does not discuss your need for accommodations due to the effects prescribed medications.

On 06/12/2015, your employing agency provided a determination regarding your request for reasonable accommodation, offering alternative accommodation of ergonomic assessment and workstation so which would allow you to perform your essential job functions while standing or sitting.

On 06/12/2015, you authored a memorandum regarding your reasonable request determination, in which you indicate formal notification that the offer is rejected and unacceptable for your medical conditions, and you indicate that the only acceptable accommodation is telework as requested.

Based upon the personal medical record provided, prior to your fall on 01/06/2016, you were prescribed Hydrocodone Bitartrate/Acetaminophen Tablet 10-325 mg by a nurse practitioner, Ms. Fraser, on 09/06/2015. This medication was prescribed for a quantity of 30 for a 10 days supply, no refills authorized. You filled this prescription on 09/06/2015. The Office notes that 30 units for a 10 days supply yields a quantity of 3 four 10-325mg dosages per day, from 09/06/2015 through 09/16/2015.

On 09/25/2015, you completed a Written Confirmation of Request for Accommodation form, in which you indicate that you are requesting reasonable accommodations of 40 hours of telework per week due to sever chronic joint pain in your back, shoulder, hips, knees, ankles and feet. You indicate that you are unable to stand, sit or walk for long durations. You indicate that you have degenerative arthritis and osteoarthritis, achalasia, gout, hypertension, obstructive sleep apnea, stress and PTSD. You describe your previous surgeries, and indicate that you are waiting a decision from your doctor about a possible shoulder surgery. You indicate that providing you with the requesting accommodation will allow you flexibility in your work situation so that you can work despite your disability. You indicate that it will also allow you to be in a location to better obtain medical care. You request a written response as soon as possible, indicating that you have taken leave to deal with your medical situation and need a decision before you are due to be back at work. The Office notes that your duty station is located in North Little Rock, and that your [home] address of record is in Cibolo, Texas, a distance of approximately 564 miles. The Office also notes that your request for accommodation does not include any indication that you require accommodations due to the effects of prescribed medications.

On 09/28/2015, your employer provided a Request for Medical Documentation form to your physician, indicating that you are requesting to telework full time and for leave to obtain medical treatment, recuperation or training related to disability. Your agency indicates that you report that you are unable to sit, stand or walk for long durations due to chronic joint pain in the back, shoulder, hips, knees, ankles and feet. Your employer requests your limitations of walking, standing and sitting per day, and provides instructions for completion of specific sections of the form.

On 10/01/2015, a nurse practitioner in Texas, Ms. Stephanie Fraser, completed the form for your employer. On this form, Ms. Fraser indicates that you have chronic low back and left shoulder pain, and that you have decreased range of motion with complaints of moderate low back pain daily. Ms. Fraser indicates that you are able to stand for 10 minutes and complain of pain in your hips and legs while standing. Ms. Fraser indicates that you are unable to reach above your head with the left hand or arm, and that you are unable to walk more than five minute without pain. Ms. Fraser indicates that your lower extremity pain in your feet, knees, and hips limits your ability to sit for too long or stand for more than 10 minutes. Ms. Fraser indicates that you are in pain management and physical therapy for the left shoulder pain and to increase your range of motion. Ms. Fraser indicate that allowing you the option of frequent breaks without disrupting other would allow you to be more comfortable and productive. Ms. Fraser indicates that you will still be able to perform the job functions and travel as needed, and that while working from home will you be productive in a more comfortable setting. Ms. Fraser also indicates that if you are allowed to work from home, you will not have to walk because your office needs will be closer in your home setting. The Office notes that Ms. Fraser does not discuss any functional limitations or needs for accommodation due to the effects of prescribed medications.

On 10/22/2015, your employing agency provided you with a determination on your request for accommodation, offering alternative accommodation of an ergonomic assessment and sit/stand workstation so that you can perform the essential job functions while accommodating your functional limitations of sitting, standing and walking. Your employer also offers you 5 days of telework per pay period (3 days on the first week, 2 days on the second week), and indicates that your alternate duty station must be within local commuting distance to your official duty station. Your employer offers you the use of leave or FMLA for physical therapy and medical appointments, and indicates that leave requests should follow the local policy and be requested in advance. Your employer indicates that this reasonable accommodation is temporary and your needs will be reviewed/updated in 90 days.

On 10/24/2015, you prepare a memorandum in response to the offer of alternative accommodation, indicating that you do not accept the offer because it would not allow you meet your medical and mental healthcare needs because your medical care is located in San Antonio, Texas and that you are unable to meet your appointments and health care needs while working in Arkansas. You express feelings that your intelligence has been insulted, and that this decision is made in personal bias against you and in retaliation for certain actions again leaders within the organization. You indicate that you have requested to work 40 hours per week in the area where your medical treatment is located, and that you would accept a telework schedule that would allow you to telework three weeks per month in the area where your medical facilities are located and one week in the area of your duty stations. You indicate that your pain shot is beginning to wear off so you have no choice but to begin taking your medication even while at work making it unsafe for yourself and others. You go on to indicate that the alternative accommodation does not eliminate a direct threat that driving to and from work while under the influence of medication brings. You indicate that this medication causes you severe dizziness and nausea, and you ask to be provided with transportation to and from work while you are under the influence. You ask for interim accommodation of 40 hours per week since you have been waiting since February for a decision.

On 11/17/2015, your employer provide a Request for Medical Documentation form to your physician, indicating that you are requesting accommodation of full-time telework due to functional limitations caused by your ability.

On 11/19/2015, you complete a request for accommodation, indicating that you are requesting to telework from home for 40 hours per week and for medical leave to obtain medical treatment, recuperation or training related to your disability. You indicate that you will consider a trial period to

see how the accommodation will work. You indicate that you have severe chronic joint pain in your back, shoulders, hips, knees, ankles and feet, and that you are unable to stand, sit or walk for long durations. You indicate that you have current medication, surgery scheduled for 12/09/2015 (one of two surgeries), and twelve weeks of mental counseling that began 11/17/2015. You indicate that you have degenerative arthritis and osteoarthritis, achalasia, gout, hypertension, obstructive sleep apnea, stress and PTSD. You discuss your previous surgeries, and indicate that the accommodation will allow you flexibility needed in your work situation so that you can work despite disability. You indicate that the accommodation will also allow you to be in a location to obtain medical care. You indicate that you would like a written response as soon as possible because you have mental health counseling weekly and are scheduled to have your first shoulder surgery on 12/09/2015. The Office notes that you do not discuss any specific accommodation needed due to effects of prescribed medication, or provide any information other than that you are taking medication.

You were schedule for a left shoulder surgery with Dr. Simon on 12/09/2015.

Based upon the personal medical record provided, prior to your fall on 01/06/2016, you were prescribed Hydrocodone Bitartrate/Acetaminophen Tablet 10-325 mg by provider P177293 on 12/09/2015. This medication was prescribed for a quantity of 120 for a 30 days supply, no refills authorized. You filled this prescription on 12/09/2015. The Office notes that provider P177293 does not indicate the name of the physician who prescribed the medication, or the reason why this medication was prescribed; however, he Office presumes that this medication was prescribed following the left shoulder surgery of 12/09/2015. The Office notes that 120 units for a 30 days supply yields a quantity of 4 four 10-325mg dosages per day, beginning on 12/09/2015 to approximately 01/09/2016.

Based upon the email correspondence provided, on 12/17/2015, your employing agency approved interim accommodation to include sick leave through 12/31/2015, and annual leave for the remaining period. You respond by indicating that unless your employer provides you with administrative leave in the interim, then you do not accept. You indicate that you have already taken enough personal leave and continued to do your job. You state that if your employer cannot given you administrative leave then you request to telework remotely for 40 hours per week immediately. You indicate that you will provide your work schedule and appointment dates/times, and that this will also include leave taken during this period. You indicate that you are receiving physical therapy from home for three days per week and that you have mental health counseling one day per week. Your agency responds, indicating that the interim accommodation is liberal approval of leave, and that you are using your sick leave to recover from surgery. Your employer indicates that you are expected to take that time off and concentrate on your recovery, and that you are not expected or required to work during this leave. You respond by indicating that the offer to use your own leave [during recovery from left shoulder surgery] is unacceptable and does not address your reasonable accommodation. Your agency again verifies that your interim accommodation is the use of liberally approved leave while your reasonable accommodation is being processed, and that you previously requested and were approved sick leave through 12/31/2015 and annual leave from 01/04/2016 through 01/15/2016. Your agency advises you that administrative leave is not approved as an interim accommodation, and that the request for full time telework is being reviewed as an option for the reasonable accommodation process. Your agency advises that if you elect not to use the liberally approved leave then you would need to return to duty and report to your official duty station. Further email correspondence in this chain from 12/18/2015 to 12/22/2015 indicate that your agency continued to provide clarification to you regarding the interim accommodation of liberal leave.

On 12/28/2015, Dr. Simon completes the form for your employer [from 11/17/2015], indicating that you underwent left shoulder surgery with recovery time of six weeks from 12/23/2015, which the

Office notes would be on or around 01/04/2016. Dr. Simon indicates that you are limited in driving, climbing, lifting with the upper extremity for six weeks from 12/23/2015, which the Office notes would be on or around 01/04/2016. Dr. Simon indicates that the extent of your limitation is no use of the left upper extremity, and that you are unable to lift, reach, walk up stairs (due to balance), or drive. Dr. Simon indicates that you may work from home. The Office notes that Dr. Simon does not discuss your post-surgical medication regimen.

On 01/04/2016, you send an email to your employer indicating that you have returned to the office and have cancelled all your appointments and leave. You indicate that since your surgery, you need transportation to and from work, because you have been ordered by your doctor not to drive due to surgery and medications. You go on to ask how your employer will handle your transportation to and from work for the next four to six months because you are unable to drive yourself and your wife is not in Arkansas. You indicate that you are unable to afford the financial hardship of paying for a taxi. You ask when you can reschedule your appointments with your doctors and psychiatrist in San Antonio so that you can work before and after your appointments. In response, your agency indicate that they are working with your management officials to address your request for accommodations and the concerns that you have regarding your office (uneven floors, heating/cooling, walking up/down stairs). The Office notes that you voluntarily terminated your approved leave and returned to work on 01/04/2016, the approximate date of recovery indicated by Dr. Simon on 12/28/2015. The Office notes that based on the prescription filled on 12/09/2015, at a dosage regimen of four 10-325mg hydrocodone per day, you continued this prescription from 01/04/2016 to 01/09/2016, after your return to work.

On 01/05/2016, you send an email to the employer indicating that you are not feeling well because you have no one to prepare your meal and that you had to take your medication on an empty stomach, causing you to feel nauseous and dizzy. You state that morning you lost your balance going up the stairs, and that it is a good thing you did not injure yourself. In response, your employer indicates that your safety is the main concern and that your management officials have provided liberal leave for you to use at this time. Your employer recommends that you follow the recommendations of your medical providers and avoid the limitations indicated until you are able to return to the work place. Your supervisor indicates that if you are unsteady on the stairs, you should get someone to assist you to avoid being injured while still experiencing dizziness. Your supervisor indicates that you may take more time off work to recover if you needed.

On 01/06/2016, the morning of injury, you send an email to your supervisor requesting arrangement be made by your employer to have someone assist you up and down the stairs. You indicate that you are in the office by 6:30am.

On 01/06/2016 at approximately 4:47pm, you seek medical attention at the emergency department of the Baptist Health Medical Center in North Little Rock, Arkansas, reporting dizziness for one day and a fall today at work in which you slid down approximately fifteen stairs. The triage nurse notes that you had a recent left shoulder surgery. The emergency department physician notes that you report that you are a supervisor of a project at the VA, and that your hometown is San Antonio but that you live here [Arkansas] while working. The physician notes that you are wearing an immobilizer on the left shoulder due to surgery a month ago. The physician notes that you report that your shoulder has been bothering you, so you took 20mg of hydrocodone when you got to work, then four hours later took 20mg more. The physician notes that you report one more dose after that, then that you had a fall at work because you felt lightheaded. The physician notes that you state you did not have any injury from the fall, but that while you were waiting to been seen at the ER, you took two more 10mg hydrocodone because of pain. The physician notes that you state that you have not been driving though you have been working daily and you are accompanied by your wife. The physician notes that

In November 2015, you resubmit your request for accommodation of full-time telework, citing that you are unable to stand, sit or walk for long durations due to chronic joint pain in your back, shoulders, hips, knees, ankles and feet. You also indicate that teleworking will allow you to work before and after obtaining medical care in Texas, and that you will be undergoing shoulder surgery. As an interim accommodation, your employing agency offered the liberal use of leave for recovery from surgery. You were authorized to use sick leave through 12/31/2015 and annual leave from 01/04/2016 through 01/15/2016.

While on approved sick/annual leave and recovering from surgery, you continue to pursue your request for reasonable accommodation to telework full time. To support your request, you provide documentation from your orthopedic surgeon, Dr. Simon, in which the physician indicates that your limitation is no use of the left upper extremity, and that you are unable to lift, reach, walk up stairs (due to balance), or drive. Dr. Simon indicates that you may work from; however, the Office notes that this does not necessarily constitute a physician's order that you must work from home.

Because you could no longer afford to use personal leave for your absence from work while recovery from shoulder surgery, you voluntarily returned to work on 01/04/2016, before the expiration of your approved leave on 01/15/2016. Upon your return to work, you sent an email to your employer advising that you have canceled all of your medical appointments because your medical providers are in Texas and your duty station is in Arkansas. You also indicate that you unable to drive due to your medications, state that your spouse is in Texas and cannot drive you, and that you cannot afford to pay for transportation to and from work. The Office notes that your wife did accompanied you to the emergency room visit in Arkansas on 01/06/2016, and that the Office has long held that matters pertaining to an employee's transportation to and from work is not considered to be in the performance of duty and is rather a personal decision of the employee pertaining to the employee's personal circumstances. Further, the Office notes that your prescription for hydrocodone was still active on the date that you voluntarily returned to work, and that you had approved leave through 01/15/2016, which would have been several days after your hydrocodone prescription expired.

On 01/05/2016, you notified your employer via email that you were feeling nausea and dizziness because you had no one to prepare your meal and you took your medication on an empty stomach. You also notified your employer of your difficulty ambulating the stairs at your duty station. The Office notes that the lack of convenience in having someone prepare your meals does not necessarily explain why you took your medication on an empty stomach. Further, the Office notes that this is the first documented evidence that you notified your employer of your specific difficulty ambulating the stairs.

In response, your employer advised you to ask someone assist you in ambulating the stairs when you felt unsteady, and encouraged you to use the authorized leave for the remainder of your recovery. Rather than agreeing to ask someone to help you, you responded by asking if your employer could arrange for someone to help you. No evidence has been submitted as to whether you asked anyone to assist you in ambulating the stairs when you left you duty station on 01/05/2016, or when you arrived to your duty station on 01/06/2016.

On the date of injury, you admittedly consumed 60 mg of hydrocodone during your workday, which presumably covered the span of eight hours. It is unknown whether you took any medication prior to arriving to work. The prescription for hydrocodone that you filled on 12/09/2015 was for a 10mg dosage very four to six hours, or up to 40mg per day, and as such, taking this narcotic medication as prescribed would have resulted in no more than 20mg intake over the course of an eight hour work day. The Office finds this to be substantive factual evidence of narcotic intoxication immediately prior to injury.

Case Number: 162240991
Employee: BILLY J. PORTER
Date: March 9, 2016

As you prepare to leave work on 01/06/2016, you sustain a fall down a flight of stairs. You immediately seek medical treatment, with your spouse in attendance, at the emergency department in Arkansas. The physician notes that you have physical signs of acute narcotic intoxication, and that you report falling at work due to lightheadedness. The physician recommends that you reduce your narcotic intake to the prescribe amount, with a plan to further reduce your intake to no narcotics, especially while at work. After a full post-fall work-up, the emergency physician notes that you sustained no injuries as a result of the fall.

You provide the records from your emergency room visit to your employer, and your employing agency advises you that you are not authorized to work in any capacity pending medical clearance from a physician due to the acute narcotic intoxication and the emergency physician's recommendation that you not work while taking narcotics. Further, your employer advises you that you are to ask someone to assist you in ambulating the stairs when you do return to work until your first floor office is ready.

You file a claim for injury, alleging that a lose stair tread caused you to fall. You alleged that this fall caused medical conditions of the neck, back, legs, shoulders and head. You seek medical treatment with several medical providers beginning on 01/20/2016 who are not considered qualified physician under the Act, and you have not provided any medical evidence of sufficient probative value to support that you actually sustained a medical condition as a result of the fall.

**BASIS FOR DECISION:**

You have established that you are a Federal civilian employee who filed a timely claim; however, after a thorough review of all evidence, your claim is denied because a medical component of the third basic element, Fact of Injury, has not been met.

Specifically your case is denied because you did not submit any medical evidence containing a medical diagnosis from a <u>qualified physician</u> in connection with the injury or event(s). Following your fall, you immediately seek medical treatment at the emergency department, where you are assessed with acute narcotic intoxication and lightheadedness, with no injury from the fall. You were afforded 30 days of due process to submit probative medical evidence from a qualified physician to support your claim for injury; however, you provided medical records from providers who are not considered qualified physicians under the Act. As such, you have not established that you actually sustained a medical condition as a result of the fall.

Even if you satisfy the medical component of the factual element of your claim, the Office finds your intoxication on 01/06/2016 to be the proximal cause of injury, thus warranting statutory exclusion of your claim for compensability under the Act. Specifically, you knowingly consumed hydrocodone that exceeded your prescribed dosage during the workday preceding injury, and you have a documented history of dizziness and lightheadedness after taking this medication, especially when taken on an empty stomach. Prior to injury, you had admitted that taking narcotic medication while at work is unsafe practice. You notified your employer of your specific difficulty ambulating stairs for this reason on the day prior to injury, and you were advised to ask someone to assistant you in going up and down the stairs when you felt unsteady. When you proceeded to ambulate the stairs when injury occurred, you did so without requesting assistance from anyone and while intoxicated with narcotic medication. The level of intoxication is documented by the emergency physician who treated you immediately following the injury, who specifically advised you to reduce your narcotic consumption to the prescribed dosage and to not take narcotic medication at work.

Although the Office did not fully develop the issue as to whether you intended to cause injury to yourself by returning to work prior to the end of your approved leave for surgical recovery, taking excessive amount of hydrocodone while at work, then ambulating the stairs without asking for assistance, the totality of evidence establishes that your acute narcotic intoxication was the proximal cause of your fall, and as such, your claim for injury is statutorily excluded from compensability under the Act.

## CONCLUSION:

Based on these findings, your claim is denied on the medical components of the third basic element, Fact of Injury, because the evidence does not support that you sustained any diagnosed medical condition as a result of the alleged injury. Further, because acute narcotic intoxication is established as the proximal cause of your fall, your claim is statutorily excluded from overage under the Act.

The requirements have not been met for establishing that you sustained an injury as defined by the FECA. Medical treatment is not authorized and prior authorization, if any, is terminated.

K. JOINER
Claims Examiner

# United States Department of Labor
## Employees' Compensation Appeals Board

|  |  |
|---|---|
| **B.P., Appellant** ) | |
| ) | |
| **and** ) | **Docket No. 17-0580** |
| ) | **Issued: March 12, 2018** |
| **DEPARTMENT OF VETERANS AFFAIRS,** ) | |
| **VETERANS HEALTH ADMINISTRATION,** ) | |
| **North Little Rock, AR, Employer** ) | |
| ) | |

*Appearances:*                                                    *Case Submitted on the Record*
*Appellant, pro se*
*Office of Solicitor*, for the Director

# DECISION AND ORDER

Before:
CHRISTOPHER J. GODFREY, Chief Judge
PATRICIA H. FITZGERALD, Deputy Chief Judge
VALERIE D. EVANS-HARRELL, Alternate Judge

## *JURISDICTION*

On January 18, 2017 appellant filed a timely appeal from a January 9, 2017 merit decision of the Office of Workers' Compensation Programs (OWCP).[1] Pursuant to the Federal Employees' Compensation Act[2] (FECA) and 20 C.F.R. §§ 501.2(c) and 501.3, the Board has jurisdiction over the merits of this case.

## *ISSUE*

The issue is whether appellant met his burden of proof to establish that he sustained an employment-related injury in the performance of duty on January 6, 2016, as alleged.

---

[1] Appellant timely requested oral argument pursuant to section 501.5(b) of Board's *Rules of Procedure.* 20 C.F.R. § 501.5(b). By order dated July 27, 2017, the Board exercised its discretion and denied the request, finding that the arguments on appeal could adequately be addressed based on the case record. *Order Denying Request for Oral Argument*, Docket No. 17-0580 (issued July 27, 2017).

[2] 5 U.S.C. § 8101 *et seq.*

On appeal appellant asserts that the evidence of record establishes that his fall on January 6, 2016 occurred in the performance of duty.

## *FACTUAL HISTORY*

On January 8, 2016 appellant, then a 54-year-old supervisory contract specialist, filed a traumatic injury claim (Form CA-1) alleging that he was injured when he slipped going down stairs at 3:30 p.m. on January 6, 2016. In an attached narrative statement, he indicated that, on the date of injury, he was wearing a sling on his left shoulder and was carrying his back pack over his right shoulder. Appellant stopped to get water to take a pain pill, took a few steps and slipped. He fell backward, striking his back, hip, and elbow. Coworkers stayed with him until an ambulance arrived. The employing establishment is located in North Little Rock, Arkansas. Appellant lives in the San Antonio, Texas, area when not working.

An employing establishment manager signed the reverse side of the claim form on January 13, 2016. He affirmatively indicated by check mark that the injury was caused by the employee's willful misconduct, intoxication, or intent to injure self or another, stating that a medical diagnosis on an emergency department report showed a diagnosis of drug intoxication. The manager also noted that appellant was instructed not to use the stairs without assistance. Continuation of pay was authorized through February 12, 2016.

Medical evidence submitted included a December 28, 2015 report in which Dr. Patrick Simon, a Board-certified orthopedic surgeon, advised that, due to previous left shoulder surgery, appellant had restrictions of no use of left arm, no walking up the stairs due to balance issues, and no driving. He indicated that appellant could work from home and that the restrictions would be for six weeks.

A summary of hospitalization dated January 6, 2016, from Baptist Health emergency department, noted that appellant was seen by Dr. Dannetta Grisham, Board-certified in emergency medicine. It listed diagnoses of lightheadedness and drug intoxication and included a list of discharge medications and instructions.

In reports dated January 22 and 29, 2016, Dr. Danilo Hoyumpa, Board-certified in family medicine, noted a history that appellant fell down stairs injuring his back, neck, and shoulder. He diagnosed left shoulder strain, cervical strain, low back strain, and advised that appellant could return to restricted duty, but must work from home due to medications and until seen by an orthopedist. Dr. Hoyumpa's reports were accompanied by treatment notes from Mark Wilson, a nurse practitioner, and Mike Hedspeth, a physician assistant, dated January 22 and 29, 2016 respectively.

In a January 27, 2016 letter, the employing establishment controverted the claim, indicating that medical documentation listed diagnoses of lightheadedness and drug intoxication. It noted that appellant had a preexisting history of left shoulder surgery that was not employment related, and maintained that there was no loose tread on the staircase. Pictures of the staircase were enclosed. Documentation regarding appellant's requests for accommodation to telework full time in June and October 2015 were also included. This indicated that appellant had requested to telework full time to accommodate his 100 percent service-connected disability and

was offered some accommodation by the employing establishment that he rejected.[3]  Email correspondence from the employing establishment to appellant indicated that he was offered an additional accommodation on January 14, 2016, which he did not accept.

On February 4, 2016 OWCP informed appellant that, when his claim was received, it appeared to be a minor injury that resulted in minimal or no lost time from work and, thus, had not been formally adjudicated at that time, but was now being reopened for formal adjudication. It advised him of the evidence needed to support his claim.  OWCP also asked the employing establishment to provide its policy regarding the use of intoxicating substances, prescription or otherwise, while on its premises.

In a February 19, 2016 response, appellant noted that he had been denied accommodations before the January 6, 2016 injury, was forced to climb stairs, had to pay for transportation to and from work, and was never offered assistance from the employing establishment.  He stated that he was originally prescribed Hydrocodone by Stephanie Fraser, a nurse practitioner, when pain shots no longer relieved his shoulder and back pain, and that Dr. Simon, his orthopedic surgeon, later prescribed the medication after December 9, 2015 shoulder surgery.  Appellant indicated that both Ms. Fraser and Dr. Simon advised that he work from home while on the medication, but no accommodations were made.  Appellant noted that coworker E.K. witnessed his fall.

A Department of Veterans Affairs (VA) document indicated that appellant is 100 percent disabled with service-connected right hand burn scars, right knee degenerative arthritis, right little finger burn scars and fracture, left great toe surgical scarring, right great toe degenerative arthritis, lumbar spine spondylosis, right leg radiculopathy, left hip degenerative arthritis, degenerative osteoarthritis of the left foot, bursitis of the right and left elbow and forearm, acromioclavicular (AC) joint separation of the left shoulder, nasal fractures, gout, hypertension, gastrointestinal reflux, obstructive sleep apnea, dysphagia, and tinnitus.

January 6, 2016 records from Baptist Health emergency department indicate that appellant arrived at 4:32 p.m. and was discharged at 7:43 p.m.  Dr. Grisham noted appellant's complaints of dizziness and fall at work.  She related a history that he slid down approximately 15 steps, and that he recently underwent left shoulder rotator cuff surgery and was wearing a left shoulder immobilizer.  Appellant told her that he took 20 mg of Hydrocodone when he got to work, took 20 mg more four hours later, took one more dose after that, and then fell at work because he felt lightheaded.  Dr. Grisham indicated that appellant reported that he had no injury from his fall, but took two more 10 mg Hydrocodone pills while he was waiting to be seen in the emergency room because of pain.  Her examination demonstrated that appellant had slightly slurred speech and was obviously somewhat sleepy.  Appellant's neck was supple with normal range of motion.  There was no edema or tenderness on musculoskeletal examination with normal range of motion.  Judgment and thought content were normal.  Dr. Grisham diagnosed lightheadedness and acute narcotic intoxication.  Electrocardiogram was abnormal and a prior

---

[3] In a request for accommodation dated October 24, 2015, appellant noted that his medical care was located in Texas, and that, if his pain shots wore off, he would then have to take medication while at work, making it unsafe for himself and others.  He also requested that transportation be provided to and from work.

anterior infarct could not be ruled out. Discharge instructions included that appellant need not work while taking narcotics and should have his orthopedic surgeon recheck his shoulder. Appellant was advised to establish treatment with a doctor in Arkansas where he worked.

Appellant also submitted a health information document that listed his medication history from August 2, 2015 to February 14, 2016. This included a notation that a right shoulder x-ray on August 2, 2015 showed degenerative changes of the AC joint. An August 28, 2015 left shoulder magnetic resonance imaging (MRI) scan demonstrated a partial thickness supraspinatus tear, mild osteoarthritis of the AC joint, bursitis, and post-traumatic scarring.

On April 15, 2015 Dr. Yickui Li, Board-certified in family medicine, noted a history of chronic lower back, left shoulder, knee, and foot pain that limited appellant's ability to sit, stand, or walk. Dr. Li advised that, if appellant could work from home, he could be productive in an environment that was more comfortable and would provide less stress on his joints.

In a January 20, 2016 form report, Ms. Fraser noted a history of left shoulder surgery and January 6, 2016 fall. She listed his restrictions, including no use of left arm, walking upstairs, or driving while taking narcotics. Ms. Fraser advised that he could work from home.

On a form report dated February 13, 2016, Dr. Hoyumpa indicated that appellant was prevented from returning to work through February 22, 2016 because he could not drive due to drowsiness from medication and must work from home. He diagnosed low back, neck, and left shoulder pain.

Appellant began seeing Dr. Daniel Beltran, a chiropractor, on February 18, 2016. He noted that on January 6, 2016 appellant slipped on a loose stair and fell back, landing on his spine. Current complaints were neck, left arm, lower back, and bilateral leg pain. Dr. Beltran described findings and diagnosed cervical sprain/strain, lumbar sprain/strain, possible herniated nucleus pulposus (HNP), left shoulder sprain/strain with internal derangement, and myofascial pain. On March 3, 2016 he noted that appellant could not work.

Email correspondence dated December 17, 2015 to January 11, 2016 between appellant and the employing establishment, documents that appellant was on approved annual and sick leave through January 15, 2016 and was told not to perform any work function. He requested reasonable accommodation to telework from his Texas home or administrative leave for his absence. The employing establishment denied his request. Appellant arrived for work at 4:46 a.m. on January 4, 2016. He advised that "liberal leave is useless" and noted that no accommodations were made to his office. Appellant requested transportation for four to six months and accommodation of his San Antonio medical appointments. At 6:47 a.m. that day the employing establishment advised that it was working with management to address his office concerns and requested additional medical documentation. The employing establishment denied his request for reimbursement of transportation expenses.

On January 5, 2016 the employing establishment noted that appellant's restrictions of no lifting, reaching, walking up the stairs, and no driving for six weeks limited his ability to perform the functions of his position and noted that he had been provided liberal leave to accommodate his condition. Appellant noted that he was not feeling well that day as he had no one to prepare

his meal and had to take his medication on an empty stomach, which caused nausea and dizziness. He advised that he lost his balance going up stairs. The employing establishment responded that appellant get help navigating the stairs and again recommended that he take the approved leave.

At 7:15 a.m. on January 6, 2015 he again reported difficulty with the stairs and reported that his office heating was not working. At 7:53 a.m. appellant requested help with the stairs. At 3:24 p.m. on January 7, 2016 the employing establishment noted his fall the previous day. It instructed appellant that, based on medical documentation received, he should get help going down stairs and when going home. The employing establishment indicated that appellant could not return to work until medically cleared. Appellant requested telework or administrative leave, which was denied.

On February 22, 2016 the employing establishment notified OWCP that there was no elevator or escalator available to appellant, that he was offered assistance in navigating the stairs, and that there were no witnesses to the January 6, 2016 fall, other than the driver who was there to pick up appellant.

By decision dated March 9, 2016, OWCP denied appellant's claim, finding that he had not submitted sufficient medical evidence to establish causal relationship between his claimed condition and the January 6, 2016 fall, and that his intoxication was the proximate cause of the injury.

Counsel timely requested a hearing with a representative of OWCP's Branch of Hearings and Review. Additional evidence submitted included correspondence regarding a 2015 alternative accommodation request, a grievance appellant filed in August 2015, medical evidence that predated the January 6, 2016 injury, a January 30, 2016 letter from appellant to his Congressman, a January 30, 2016 letter in which appellant rejected the employing establishment's offer of alternative accommodation and his March 1, 2016 appeal, and e-mail communications between appellant and the employing establishment dated January 14 to March 21, 2016 which mainly dealt with his request to work from home in Texas. The e-mails included a list of his medications and schedule of his weekly medical appointments.

A July 13, 2015 computerized tomography (CT) scan of appellant's head was normal. A July 13, 2015 lumbar spine MRI scan revealed disc bulges at L4-5 and L5-S1 with mild neural foraminal narrowing and facet degenerative changes. A July 23, 2015 x-ray of the cervical spine demonstrated minimal degenerative spurring and no other significant abnormalities.[4] A December 19, 2015 discharge note indicated that appellant had left shoulder surgery. It noted that he should not bear weight with his left arm and should wear a sling at all times. One to two tablets of Norco, every four to six hours, was prescribed for pain.[5]

---

[4] The record also contains March 15, 2016 cervical and spine MRI reports showing a protrusion-subligamentous disc herniation at C3-4 and a protrusion-subligamentous disc herniations at L3-4, L4-5, L5-S1. A May 8, 2016 cervical spine x-ray showed minimal degenerative spurring.

[5] The medical provider signature is illegible.

Dr. Hoyumpa provided a treatment note dated February 13, 2016. He noted that appellant was originally seen on January 22, 2016 for a January 6, 2016 employment injury when he fell down stairs while carrying a back pack, injuring his left shoulder, neck, and lower back. Dr. Hoyumpa noted appellant's complaint of continued sharp pain for which he was taking Hydrocodone. He diagnosed strains of the left upper extremity and neck and low back pain, all improved. Dr. Hoyumpa advised that appellant should remain off work, noting that his medication caused drowsiness.

In a March 19, 2016 report, Jeff Dickerson, a nurse practitioner, noted a history that appellant fell down a flight of stairs on January 6, 2016, and listed appellant's complaints of continued cervical and lumbar spine pain. He reviewed results of diagnostic testing, described findings, and offered diagnoses for the cervical and lumbar spine. Mr. Dickerson advised that appellant's subjective complaints, combined with his physical examination and imaging studies, were consistent with the reported mechanism of injury. Dr. Beltran continued to submit duty status reports (CA-17 forms) advising that appellant could not work.

In a treatment note dated March 30, 2016, Dr. Johnny White, Board-certified in anesthesiology and pain medicine, listed January 6, 2016 as the date of injury and slip and fall under a heading "causation." He described appellant's complaints of radiating back pain and left shoulder pain with difficulty standing erect, fatigue in legs with walking, sleep dysfunction, right leg tingling, and bilateral leg swelling and heaviness with ambulation. Low back examination demonstrated positive straight leg raising bilaterally and tenderness over the paravertebral muscles. Dr. White reviewed the March 23, 2016 lumbar spine MRI scan and diagnosed sprain of ligaments of lumbar spine, intervertebral disc disorders with radiculopathy, lumbosacral region. He recommended epidural injections.

In correspondence dated March 31, 2016, appellant requested that Baptist Health amend its medical record regarding inaccuracies in its medical report.

On May 5, 2016 Dr. Beltran advised that appellant must work from home due to medication. In an amended May 5, 2016 duty status report (Form CA-17), the chiropractor also indicated that appellant needed physical therapy three times per week. He continued to submit reports indicating that appellant must work from home due to medication. On May 16, 2016 Dr. Simon advised that appellant could perform light duty, but must work from home and would have physical therapy appointments.

Appellant filed an additional grievance in May 2016. He returned to duty on May 13, 2016.

During the hearing, held on November 8, 2016, appellant testified that he did not work from January to July 2016 and had been instructed to return to work. He indicated that on January 6, 2016 he could not drive because he had undergone nonemployment-related rotator cuff surgery and was taking Hydrocodone and Naprosyn for pain and additional medication for hypertension and gout, and had restrictions provided by Dr. Simon on December 31, 2015 of no stair-climbing and no driving. Appellant stated that he felt lightheaded and sick to his stomach at work on January 6, 2016, and that his driver E.K., a friend, came his office and walked in front of him as he went down the stairs. He stated that he took Hydrocodone just as he left, picked up

his backpack, took a few steps and slid almost to the landing. Appellant noted that the building had no elevator and the employing establishment would not give him a first floor office. He related that coworkers helped him sit up until he was taken to an emergency room. Appellant maintained that the Hydrocodone had kicked in and made him groggy and sleepy, and that the emergency room report was incorrect. He indicated that he also had a history of bilateral total knee replacements and needed a hip replacement. Appellant stated that he returned to work the next day, but was sent home. He claimed that he injured his back, left shoulder, and neck. The hearing representative advised him to get a statement from his driver and provide supportive medical evidence. The record was left open for 30 days.

The only evidence received by OWCP after the hearing were duplicates of the March 15, 2016 MRI scans, and an October 5, 2016 report in which Dr. Beltran described examination findings. Dr. Beltran reviewed the March 15, 2016 MRI scans and diagnosed cervical and lumbar herniated discs, left shoulder sprain/strain with internal derangement, and myofascial pain. He noted that appellant had left shoulder surgery on December 9, 2015 and returned to work on January 4, 2016. Dr. Beltran indicated that the January 6, 2016 fall caused a worsening of left shoulder symptoms, and neck and lower back pain. He opined that, within reasonable medical probability, appellant's history, mechanism of injury, and physical examination findings were consistent with injuries to his cervical spine, lumbar spine, and left shoulder.

By decision dated January 9, 2017, OWCP's hearing representative found that appellant's fall on January 6, 2016 was caused by medication intoxication and, assuming arguendo that it was not caused by narcotic intoxication, it was an idiopathic fall related to appellant's left shoulder injury. The hearing representative affirmed the March 9, 2016 decision.

### *LEGAL PRECEDENT*

An employee seeking compensation under FECA[6] has the burden of proof to establish the essential elements of his or her claim by the weight of reliable, probative, and substantial evidence,[7] including that he or she is an employee within the meaning of FECA, that the claim was filed within the applicable time limitation,[8] and that he or she sustained an injury in the performance of duty as alleged. The employee must also prove that any disability from work was causally related to the employment injury.[9]

To determine whether a federal employee has sustained a traumatic injury in the performance of duty, it first must be determined whether fact of injury has been established.

---

[6] *Supra* note 2.

[7] *J.P.*, 59 ECAB 178 (2007).

[8] *R.C.*, 59 ECAB 427 (2008).

[9] *Id.*; *Elaine Pendleton*, 40 ECAB 1143, 1145 (1989). OWCP regulations define a traumatic injury as a condition of the body caused by a specific event or incident or series of events or incidents within a single workday or shift. 20 C.F.R. § 10.5(ee). OWCP regulations define the term "occupational disease or illness" as a condition produced by the work environment over a period longer than a single workday or shift." 20 C.F.R. § 10.5(q).

There are two components involved in establishing fact of injury. First, the employee must submit sufficient evidence to establish that he or she actually experienced the employment incident at the time, place, and in the manner alleged. Second, the employee must submit medical evidence to establish that the employment incident caused a personal injury.[10]

Under FECA, OWCP shall pay compensation for the disability or death of an employee resulting from personal injury sustained while in the performance of duty, unless the injury or death is proximately caused by the intoxication of the injured employee.[11] Intoxication is an affirmative defense and, if invoked, OWCP must do so during the initial adjudication of the claim.[12] In order to correctly invoke section 8102(a)(3), OWCP must establish by reliable, probative, and substantial evidence that intoxication was the proximate cause of injury or death.[13]

OWCP procedures provide that where intoxication may be the proximate cause of the injury, the record must contain all available evidence showing: (a) the extent to which the employee was intoxicated at the time of injury; and (b) the particular manner in which the intoxication caused the injury. It is not enough merely to show that the employee was intoxicated. It is also OWCP's burden to show that the intoxication caused the injury. An intoxicant may be alcohol or any other drug.[14]

In addition to obtaining statements from the supervisor/official superior, the employee and any coworkers or other witnesses, the procedures also indicate that a statement should be obtained from the physician and the hospital where the employee was examined following the injury which describes as fully as possible the extent to which the employee was intoxicated and the manner in which the intoxicant was affecting the employee's activities.[15] Moreover, the results of any tests made by the physician or hospital to determine the extent of intoxication should be obtained.[16]

## *ANALYSIS*

The Board finds that OWCP did not meet its burden of proof to deny this claim by raising the affirmative defense of intoxication.

---

[10] *T.H.*, 59 ECAB 388 (2008).

[11] 5 U.S.C. § 8102(a)(3).

[12] *T.F.*, Docket No. 08-1256 (issued November 12, 2008).

[13] *Id.*

[14] Federal (FECA) Procedure Manual, Part 2 -- Claims, *Performance of Duty*, Chapter 1.804.14.c(1) (September 1995).

[15] *Id.* at Chapter 1.804.14.c(2)(3).

[16] *Id.*

As noted, OWCP's use of an affirmative defense must be invoked in the original adjudication of the claim, and OWCP has the burden to prove such a defense.[17] The evidence to establish this defense must be reliable, probative, and substantial.[18] When intoxication is invoked as an affirmative defense, the Board has explained that the statutory test under FECA is "proximate cause." Therefore, OWCP must show that the employee was in fact intoxicated when the injury occurred and that such intoxication was the proximate cause of such injury. A mere showing that intoxication existed concurrently with the injury is insufficient.[19] FECA does not intend that compensation shall be denied where intoxication is one cause of injury or death, on the theory that if an employee is intoxicated he or she is not in the performance of duty. Intoxication as a cause does not, *ipso facto*, take the case out of the performance of duty.[20] In defining what is meant by proximate cause, the Board has stated that intoxication as one cause of an injury does not destroy the possibility of an injury arising out of and in the course of employment, and that intoxication does not bring the case within the statutory language under which benefits may be denied, unless the injury was occasioned solely by or was proximately caused by intoxication.[21] Something more is necessary than a mere showing that intoxication existed concurrently with injury. If the injury was solely caused by intoxication, then the statute requires denial of benefits, but this test can only be applied where the injury is one arising out of and in the course of employment from other aspects, as this fundamental prerequisite must be satisfied first before applying the secondary "cause" test. If the first test is not met, then there is no need to apply the second test.[22]

In the case at hand, at the time of appellant's injury at 3:30 p.m. on January 6, 2016, he was just ending his day as a contract specialist. To arise in the course of employment, an injury must occur at a time when the employee may reasonably be said to be engaged in his master's business, at a place when he or she may reasonably be expected to be in connection with his employment, and while he or she was reasonably fulfilling the duties of the employment or engaged in doing something incidental thereto.[23] The Board has accepted the general rule of workers' compensation law that, as to employees having fixed hours and places of work, injuries occurring on the premises of the employing establishment, while the employee is going to or

---

[17] *Supra* note 12.

[18] *Supra* note 13.

[19] *N.P.*, Docket No. 10-0952 (issued July 26, 2011).

[20] In *Ruth Bubier (Sylvester C. Bubier)*, the Board considered whether intoxication was the proximate cause of the employee's injury and death. It noted that, under FECA, intoxication comes into picture as destroying the right to compensation in situations, otherwise within the performance of duty, only if intoxication is the proximate cause of the injury. *Ruth Bubier (Sylvester Bubier)*, 2 ECAB 60 (1948).

[21] *Id.*

[22] *Id.; see N.P., supra* note 19.

[23] *P.S.*, Docket No. 08-2216 (issued September 25, 2009).

from work, before or after working hours, or at lunch time, are compensable.[24] Thus, appellant was in the course of employment when the January 6, 2016 incident occurred.

Appellant arrived at the emergency department at 4:32 p.m. in January 6, 2016 and was discharged home at 7:43 p.m. Dr. Grisham noted his complaint of dizziness and fall at work. She related a history that he slid down approximately 15 stairs, and that he recently had left shoulder rotator cuff surgery and was wearing a left shoulder immobilizer. Dr. Grisham reported that appellant told her he took 20 mg of Hydrocodone when he got to work, took 20 mg more four hours later, took one more dose after that, and then fell at work because he felt lightheaded. She indicated that appellant reported he had no injury from his fall, but took two more 10 mg Hydrocodone pills while he was waiting to be seen in the emergency room because of shoulder pain. On examination appellant had slightly slurred speech and was somewhat sleepy. Judgment and thought content were normal. Dr. Grisham diagnosed lightheadedness and acute narcotic intoxication. The record, however, does not include a toxicology report that could provide evidence of intoxication. As noted, it is not enough to show that an employee was intoxicated. Therefore, even if the record in this case contained positive toxicology reports in the record, these would not necessarily establish that appellant was intoxicated at the time of the fall such that intoxication was the proximate cause of the fall.

The Board finds that the evidence of record establishes only the possibility that appellant was intoxicated by ingestion of medication at the time of injury.[25] The record is insufficient to establish that intoxication was the proximate cause of his fall. The Board, therefore, finds that OWCP has not met its burden of proof to establish the affirmative defense of intoxication. Therefore, the claim is not precluded under 5 U.S.C. § 8102(a)(3).

The record indicates that no coworkers witnessed the fall. Appellant testified at the hearing that he was accompanied on the stairs by coworker, E.K. The hearing representative asked that he obtain a statement from her, but appellant did not do so. As the incident was witnessed, it is incumbent on appellant to furnish this statement to OWCP so that a proper description of his fall can be determined for assessing whether the fall was idiopathic in nature and, if not, the nature and degree of any injuries sustained.[26]

The case will be remanded to OWCP to first obtain a witness statement from E.K. to determine an exact description of the incident, to be followed by evaluation of the medical evidence and a determination of the extent of any injury and periods of disability. Following this and any other development deemed necessary, OWCP shall issue a *de novo* decision.

---

[24] *R.M.*, Docket No. 07-1066 (issued February 6, 2009).

[25] *N.P., supra* note 19.

[26] As to the hearing representative's reliance on the idiopathic fall doctrine, to properly apply the idiopathic exception to the premises rule, there must be two elements present: a fall resulting from a personal, nonoccupational pathology, and no contribution from the employment. *N.P.*, Docket No. 08-1201 (issued May 8, 2009). As the exact circumstances of the fall have yet to be determined, the Board is unable to properly adjudicate this issue.

## CONCLUSION

The Board finds that the case is not in posture for decision.

## ORDER

**IT IS HEREBY ORDERED THAT** the January 9, 2017 decision of the Office of Workers' Compensation Programs is set aside. The case is remanded to OWCP for further proceedings consistent with this decision of the Board.

Issued: March 12, 2018
Washington, DC

Christopher J. Godfrey, Chief Judge
Employees' Compensation Appeals Board

Patricia H. Fitzgerald, Deputy Chief Judge
Employees' Compensation Appeals Board

Valerie D. Evans-Harrell, Alternate Judge
Employees' Compensation Appeals Board

# CERTIFICATE OF SERVICE

ECAB-2017-0580 Mr. Billy Julius Porter, Jr v. DEPARTMENT OF VETERANS AFFAIRS, AUSTIN, TX

I certify that the parties below were served this day.

_____03/12/2018_____
(DATE)

_____
Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards

Counsel for Claims and Compensation
USDOL SOL FEEWC
200 Constitution Ave NW
Washington, DC 20210
    --Electronic

Mr. Billy Julius Porter, Jr
113 Brook Bend
Cibolo, TX 78108
    --Electronic

Office of Workers' Compensation Programs
Division of Federal Employees' Compensation
Attn: Director OWCP-DFEC
Washington, DC 20210
    --Electronic